IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2015 Session

## TRAVIS G. McCOSH v. JENNIFER BURNS McCOSH

**Appeal from the Chancery Court for McMinn County**
**No. 24189     Jerri S. Bryant, Chancellor**

_____

**No. E2014-01702-COA-R3-CV-FILED-AUGUST 31, 2015**

_____

This is a post-divorce case.  Travis G. McCosh (Father) appeals the trial court's judgment increasing his child support payment retroactively to the date that Jennifer Burns McCosh (Mother) filed a counterclaim seeking (1) to modify the parties' permanent parenting plan and (2) the recalculation of child support pursuant to the Child Support Guidelines. Father also appeals the trial court's award of $500 in attorney's fees to Mother.  We hold that the proof establishes a significant variance between the amount of the current support order and the amount of the presumptive support based upon the relevant facts before the trial court.  The significant variance is due primarily to the fact that Father's income has increased significantly between the time of the last child support order and the filing of Mother's petition. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.


Craig L. Garrett, Maryville, Tennessee, for the appellant, Travis G. McCosh.

Donald (Trey) Winder, III, Athens, Tennessee, for the appellee, Jennifer Burns McCosh.

### OPINION

### I.

Two children were born to the parties during their marriage.  The parties were divorced in 2008.  On September 10, 2008, the trial court entered a permanent parenting

plan order as part of the divorce judgment. That order is not included in the record before us. On September 10, 2010, Father filed a petition seeking to decrease his child support payment because of a change in his income. The trial court entered an order with a new child support worksheet modifying Father's child support obligation.

On February 10, 2012, Father, representing himself, again filed a petition requesting that his child support payment be reduced. He alleged that Mother was not working other than as a full-time stay-at-home mom. He argued that she did not need money for child care. Attached to Father's petition was a child support worksheet reflecting his monthly income of $1,937, Mother's income of $692 per month, and Father's child support payment of $505 per month. Mother answered and filed a counterclaim stating in pertinent part as follows:

> [Mother] avers there has been a material change in circumstances, [in that Father] is not exercising his co-parenting time pursuant to the parties' parenting plan.
>
> *     *     *
>
> That the [Father] has exercised the following days with the child[ren]:
>
> > 2009 - 62 days
> > 2010 - 67 days
> > 2011 - 60 days
> > 2012 - 64 days
>
> That the [Father's] co-parenting time should be modified and a new parenting plan (attached) be established in the best interest of the children.
>
> *     *     *
>
> WHEREFORE, PREMISES CONSIDERED, COUNTER-PETITIONER PRAYS FOR THE FOLLOWING RELIEF:
>
> 1. That [Father] be required to answer the [counterclaim] within the time required by law.
>
> 2. That the Court modify the [Father's] co-parenting time.

3. *That child support be calculated pursuant to the Guidelines.*

4. That the [Father] be required to pay [Mother's] attorney's fees and any other costs associated with this cause.

5. General relief.

(Emphasis added; numbering in original omitted; capitalization in original.)

Mother's proposed parenting plan was based upon her having the children 285 days per year and Father having them 80 days. The parties agreed that the original parenting plan order entered by the court called for 265 days for Mother and 100 days for Father. Mother also sought the federal income tax exemption for both children, a change from the original order, which provided each parent would claim one child on his/her tax return.

On February 7, 2013, Father voluntarily nonsuited his petition to modify child support. Father answered Mother's counterclaim, denying Mother's allegations of the number of actual days he had spent with the children from 2009 to 2012, and moved for judgment on the pleadings, averring as follows:

The Mother seeks to modify the number of the Father's co-parenting days from 100 to 80 per year and the Father does not agree to said recalculation because the Mother's proposed Parenting Plan actually designated more specific co-parenting time for the Father than the original Parenting Plan.

* * *

The Mother proposes the parties split Spring and Fall Breaks and the Father agrees to this proposed modification and would state that the original Parenting Plan did not split Spring and Fall Breaks but the stated day-to-day schedule would apply.

The Mother proposes adding a provision stating co-parenting will occur "Any other time the parties agree to" and the Father agrees to said provision.

3

The Mother proposes the Father have two non-consecutive weeks of summer vacation co-parenting and the Father agrees to the two weeks but disagrees that the Mother should designate one of the Father's weeks. The original Parenting Plan did not provide for the Father's summer co-parenting but stated the day-to-day schedule would apply.

*        *        *

The Mother seeks to claim both children for the Federal tax exemption and the Father opposes said modification and would note that the original Parenting Plan allows each party to claim one child.

The Father moves the Court for Judgment on the Pleadings and in support thereof would aver that based on the [counterclaim] and the Answer thereto, there is no issue requiring testimony and the Court can decide the matter based on the pleadings submitted. In that regard, the [Mother] has submitted a proposed Parenting Plan that designates more co-parenting time to the Father than the original Parenting Plan and therefore there is no basis whatsoever to reduce the Father's number of days from 100 to 80, to modify child support or to modify the parties' agreement to each claim one child for Federal tax purposes. The Mother's pleadings regarding the number of co-parenting days exercised by the Father in the years 2009 to 2012 are irrelevant and immaterial to any issue before the Court since her proposed changes to the Parenting Plan do not reduce Father's designated co-parenting time but actually increase his co-parenting time.

On September 26, 2013, the trial court entered an order stating as follows:

Counsel in this case have asked the court to look at the issue of whether the modification of parenting time between the parties by agreement is of sufficient amount for the court to recalculate child support. After a review of the submission by the parties and after a review of the case of *Sykes vs. Sykes*, Tenn. Ct. App. #M2012-01146-COA-R3-CV, August 28, 2013, the court finds that a recalculation of child support is

4

mandated.[1]   The court will therefore require the parties to exchange income information, and child support worksheets should then be provided to this court on or before October 16, 2013.  If the parties are unable to agree to the appropriate amount of child support payable under the guidelines, the court will hear further argument on that day.

(Footnote added.)

On March 6, 2014, the trial court entered another order providing as follows:

This matter came to be heard on the 14th day of February, 2014.  The parties were divorced in 2008.  They presented to the court a Parenting Plan outlining co-parenting time incorrectly reciting the number of days.  That Parenting Plan was approved by the court. . . . When Mother amended her [counterclaim] on March 8, 2013, she alleged that [her] parenting time should be modified, that child support should be calculated according to the guidelines, and asked for attorney's fees.  The proposed Parenting Plan submitted by the Mother reflected that Father would have eighty (80) days per year.  This was different from the previous plan that stated Father was getting one hundred (100) days.  Curiously, if the days recited had been added up correctly, the number of days Father was allotted was eighty (80) days . . .

. . . Father filed a proposed Parenting Plan indicating the number of days for co-parenting time to be one hundred (100).  The parties agreed on the Parenting Plan and argued [about] whether the court could alter child support since there were only slight changes in the days given Father, but this court recognized the parties had incorrectly calculated those days. . . .

. . . [T]he court finds that there should be a recalculation of child support even though the parties settled their co-

---

[1] This Court has examined the *Sykes* opinion and, while we have no disagreement with the principles enunciated therein, we do not find them controlling or pertinent to the issues presented in this case.  We believe the child support recalculation was mandated by Mother's request in her counterclaim and the controlling statutes and Child Support Guidelines, as further discussed later in this opinion.

parenting differences. Further, the court finds that the actual calculation of co-parenting days is eighty-four (84) days. The court further holds that Mother should be allowed to claim the children for IRS purposes.

After entry of these two orders, the parties each submitted a proposed permanent parenting plan order and accompanying child support worksheet. Each proposed plan provided for 281 parenting days for Mother and 84 days for Father. Both proposed plans and child support worksheets reflected a monthly income for Mother in the amount of $1,959.75. Father's proposed plan and worksheet showed his income to be $5,156.85 per month, which resulted in a child support payment of $1,127. These figures were slightly different from Mother's proposed plan and worksheet, which reflected Father's monthly income to be $5,841.87, resulting in child support of $1,192 per month.

On April 22, 2014, the trial court entered an order stating as follows:

> The parties' Permanent Parenting Plan is hereby modified such that New Year's Day and Halloween are eliminated as holidays. The Parenting Plan shall provide that the parties will split spring break and fall break, and that the father will have two nonconsecutive weeks of summer vacation co-parenting. Further the Parenting Plan shall provide that the receiving parent will be responsible for transportation including if the children are in after school care, in which case the parent receiving visitation will pick the children up from there, plus adding a provision that states "Any other time the parents agree to."
>
> The Parenting Plan shall be further modified to provide that the mother shall be allowed to claim the parties' minor children as Federal income tax exemptions.
>
> The Court has recalculated the father's number of days and the Parenting Plan shall provide that the father shall receive 84 days of co-parenting and the mother 281.
>
> That the attached Permanent Parenting Plan has incorporated the changes ordered and the Court finds the same to be in the best interests of the minor children and hereby approves and adopts said Permanent Parenting Plan and incorporates the same herein by reference.

The child support shall be modified retroactively to March 8, 2013, and the father shall pay $1,127.00 per month in child support as set forth in the attached Child Support Worksheet which shall be attached to the parties' Permanent Parenting Plan and the Court finds that the Child Support Worksheet and the child support figure set forth therein comply with the Child Support Guidelines.

Father filed a motion to alter or amend, in which he argued as follows:

[Father] moves the Court to reconsider and modify and alter this Ruling as the [counterclaim] filed by [Mother] in this cause was not a petition to modify child support, and therefore, it is improper to modify the child support back to the date of the filing of the Petition.

The [counterclaim] ultimately filed by [Mother] on March 8, 2013, was a Petition to modify co-parenting with the ground alleged that . . . Father was not exercising his co-parenting time pursuant to the parenting plan. The Petition was not and it was never pled as a petition to modify child support based on a significant variance or any other change in circumstance. As a result of the grounds of the Petition being a Petition to modify co-parenting, it is improper to retroactively modify the child support to a date prior to the date that the [court] actually modified the parenting plan.

\*       \*       \*

[Father] avers that while it is proper in a case to seek a modification in child support based on a significant variance and material change in income, that was never done in this case. In this case there was never a prayer for modification of child support but the case was styled as and the pleadings stated it was a petition to modify co-parenting. As a result thereof, it is improper for the Court to make the modification of child support retroactive back to a date prior to when the Court actually modified the parties' co-parenting schedule and parenting plan.

Based on all of the above, [Father] avers that it is improper for the Court to retroactively modify the child support in this cause back to the date of March 8, 2013, which is the date [Mother] filed her [counterclaim].

Mother filed a response arguing that the parenting plan submitted by Father and entered by the trial court did not accurately reflect the court's order in several particulars. For example, it provided that each parent would claim one child as a federal income tax exemption, contrary to the trial court's ruling.

On August 5, 2014, the trial court entered an amended final order providing in pertinent part:

The parties previously submitted competing final orders to the Court and the Court signed the Order of the [Father] with a slight modification. The Final Order submitted by the [Father] had a Parenting Plan attached that inadvertently contained errors. Those errors have been corrected and the corrections are included in the attached Permanent Parenting Plan.

\*     \*     \*

The child support shall be modified retroactively to March 8, 2013 and the father shall pay $1,127.00 per month in child support as set forth in the attached Child Support Worksheet . . . .

The retroactive application of child support creates a judgment for retroactive support in the amount of $7,076 being from March 8, 2013 through the end of May, 2014.

The same day, the trial court entered a second order awarding Mother $500 in attorney's fees "for having to respond to the inappropriately prepared Permanent Parenting Plan as well as multiple Motions to Alter or Amend Judgment dealing with issues that the court previously decided in September, 2013."

Father filed a notice of appeal on September 3, 2014. As a preliminary matter, Mother argues that the appeal was not timely filed. We disagree. In ***Ball v. McDowell***, the Supreme Court addressed the effect of the trial court's entry of an amended final

judgment for purposes of determining when the 30-day period for filing a notice of appeal began running, stating:

> If timely, certain post-trial motions, such as [a] motion to alter or amend, will toll commencement of the thirty-day period for filing a notice of appeal until the trial court enters an order granting or denying the motion.
>
> \*     \*     \*
>
> To analyze whether an order operates as a final judgment, we must examine the parties' claims and the manner in which the trial court adjudicated those claims. An order that fails to adjudicate all of the parties' claims is unenforceable and not subject to appeal. . . . A final judgment therefore is one that resolves all of the parties' claims and leaves the court with nothing to adjudicate.
>
> \*     \*     \*
>
> To determine which of the judgments entered in this case constitutes the final judgment, we must focus on whether the second judgment affected any of the parties' substantive rights and obligations settled by the first judgment.
>
> \*     \*     \*
>
> We conclude that when consecutive "final" judgments are entered, a subsequent entry of judgment operates as the final judgment only if the subsequent judgment affects the parties' substantive rights or obligations settled by the first judgment.

288 S.W.3d 833, 836-38 (Tenn. 2009). In the present case, the second, "amended final judgment" affected the parties' substantive rights and obligations by making several significant changes to the initial "final" order. Furthermore, the trial court did not address Mother's claim for attorney's fees until its order of August 5, 2014, was entered. "This Court has concluded on several occasions that an order that fails to address an outstanding request for attorney's fees is not final." *City of Jackson v. Hersh*, No. W2008-02360-COA-R3-CV, 2009 WL 2601380 at \*4 (Tenn. Ct. App. W.S., filed Aug. 25, 2009). Father's notice of appeal was timely filed within 30 days of the final judgment dated August 5, 2014.

9

II.

Father raises the following issues, as quoted from his brief:

> 1. Was it error for the trial court to modify the number of co-parenting days, child support, and federal tax exemptions?
>
> 2. Was it error to make the child support modification retroactive to the date of filing [Mother's] . . . [counterclaim]?
>
> 3. Was it error for the court to award attorney fees?

III.

"Our review of the trial court's findings of fact is de novo upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise." ***Kaplan v. Bugalla***, 188 S.W.3d 632, 635 (Tenn. 2006) (citing Tenn. R. App. P. 13(d); ***Kendrick v. Shoemake***, 90 S.W.3d 566, 569-70 (Tenn. 2002)). "The trial court's conclusions of law are reviewed de novo, with no presumption of correctness accorded to the decisions of the courts below." ***Id.***

IV.

A.

Regarding the trial court's modification of the residential parenting schedule, the Supreme Court has observed:

> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." ***Suttles v. Suttles***, 748 S.W.2d 427, 429 (Tenn. 1988). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." ***Eldridge v. Eldridge***, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule

should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

*Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013) (brackets in original; internal citations omitted).

In this case, the parties agreed on many of the modifications to the residential parenting schedule. In her amended counterclaim, Mother requested that the trial court modify the number of Father's parenting days to reflect the number of days he was actually spending with the children. The trial court took a close look at the original parenting plan and calculated that the actual number of parenting days provided in the plan to Father was 84, not 100 as recited in the original plan. The court entered 84 days into the child support calculator. In doing so, the trial court did not abuse its discretion. In determining the correct amount of child support, it is important to use the correct number of co-parenting days for both parents. Moreover, Father concedes that the correct number of parenting days for him under the original plan was actually 84 days, not 100. We affirm the modification of the parenting plan to reflect the correct number of parenting days for each party. We also hold that the trial court's modification to allow Mother the federal income tax deduction for both children was not an abuse of discretion.

B.

Regarding the trial court's modification of child support, we have recently stated:

Modification of child support in this state is governed by Tennessee Code Annotated section 36–5–101(g). *Kaplan v. Bugalla*, 188 S.W.3d 632, 636 (Tenn. 2006). "In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines" that are promulgated by the Tennessee Department of Human Services Child Support Service

11

> Division. Tenn. Code Ann. § 36–5–101(e)(1)(A); *see generally* Tenn. Comp. R. & Regs. 1240–2–4. Trial courts have discretion to set the amount of child support within the strictures of the Guidelines promulgated by the Tennessee Department of Human Services. Accordingly, we review a trial court's decision involving child support for an abuse of discretion. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

*Langlo v. Langlo*, No. E2014-00548-COA-R3-CV, 2015 WL 1810513 at *4 (Tenn. Ct. App. E.S., filed Apr. 20, 2015).

Tenn. Code Ann. § 36-5-101(g)(1) provides as follows in pertinent part:

> Upon application of either party, the court shall decree an increase or decrease of support when there is found to be a significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered, unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances that caused the deviation have not changed.

The child support guidelines define "significant variance," as pertinent to this action, as:

> For all orders that were established or modified January 18, 2005 or after, under the income shares guidelines, a significant variance is defined as at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order[.]

Tenn. Comp. R. & Regs. 1240-02-04-.05(2)(c).

Father has taken the position throughout this litigation that Mother did not sufficiently plead or present the issue of whether his child support should be modified. The trial court disagreed, and so do we. Mother's counterclaim, in her prayer for relief, requests "[t]hat child support be calculated according to the Guidelines." Furthermore, in her memorandum briefing certain issues requested by the trial court, Mother, arguing that "it is important to recognize that the application of the Child Support Guidelines is required in all cases," asserts:

If the Guidelines are applied here, the resulting obligation to ensure they are applied correctly to the current circumstances of the parties extends beyond the division of time, but also to ensuring their income is accounted for accurately. To do that the father's current income will need to be provided. This obligation should not be surprising to him as he is already required under the Parenting Plan to annually "send proof of income to the other parent for the prior calendar year." As the father has not done so this year, there is no added burden. If the resulting calculation is done with the variables accounted for correctly under the law stated above, and [the] new calculation results in a 15% variance, then the party for whom it is in favor is entitled to the benefit of the new calculation.

\*       \*       \*

[T]he mother is entitled to receive the father's current income information to see whether, based on the parties' agreement and the appropriate application of the current Guidelines[,] there is a variance that would necessitate a change to the current child support obligation.

The issue of the correct amount of Father's child support under Tenn. Code Ann. § 36-5-101(g)(1) and the guidelines was clearly before the trial court.

The documents *filed by Father* – which are contained in the record – clearly establish a significant variance of more than 15% between the current child support order and the presumptive support order using Father's updated income figures. As already noted, the child support worksheet attached to Father's earlier petition to reduce child support indicated that his monthly income was $1,937 and reflected that his child support payment was $505. After Mother filed her counterclaim, the trial court accepted *Father's* statement that his monthly income was $5,156.85. When the correct amount of Father's income is entered into the worksheet calculator, the result is a monthly child support obligation of $1,127. The trial court further found that "the retroactive application of child support creates a judgment for retroactive support in the amount of $7,076[,] being from March 8, 2013 through the end of May, 2014." This latter finding indicates that Father was underpaying his presumptive child support in those 15 months by approximately $471.73 per month. The 15% significant variance threshold has easily been met in this case.

13

Father argues that the trial court erred in making the child support modification retroactive to the date that Mother filed her counterclaim asking the court to recalculate child support under the guidelines. Regarding retroactivity of a child support modification, Tenn. Code Ann. § 36-5-101(f)(1) provides:

> Any order for child support . . . shall not be subject to modification as to any time period or any amounts due *prior to the date that an action for modification is filed* and notice of the action has been mailed to the last known address of the opposing parties.

(Emphasis added.) The statute permits the modification of child support retroactively to the time the action for modification was filed. This provision makes sense in that it removes any incentive an obligor parent might otherwise have in delaying litigation and resolution, in an attempt to keep his or her child support payment lower for as long as possible. It is somewhat ironic that this action began with Father's own petition to modify child support. In any event, the statute provides the trial court with discretion to order modification retroactive to the date a parent's request for such relief was filed. The trial court did not abuse its discretion in doing so here.

Father's counsel sent a letter to the trial court, which was filed and included in the record, explaining the difference between Father's and Mother's estimate of Father's then-current income. It states in pertinent part as follows:

> [Mother's attorney] made his child support calculations based on a paycheck stub for the father from October, 2013 and their monthly gross income figure was $5,961.31. (See the attached October 11, 2013 Order.) My child support figure is based on averaging [Father's] 2013 and 2012 incomes from his W-2's for each of those years. [Father] works at Denso and works a substantial amount of overtime. His base salary is $41,184 based on a 40 hour week at $19.80 per hour. *I enclose his 2012 and 2013 W-2's which show gross income of $53,662.13 and $70,102.45 respectively.* These W-2's obviously reflect a significant difference in income each year, which is based on the overtime worked. We felt it was proper to take an average of the two years' incomes because the overtime varies from year to year.

(Emphasis added.) By Father's own admission, as supported by his own W-2 form, Father earned $70,102.45 in 2013, about $5,841.87 per month. The record therefore

14

clearly supports the trial court's decision to modify child support beginning March 8, 2013.

## C.

As already stated, the trial court awarded Mother $500 in attorney's fees "for having to respond to the inappropriately prepared Permanent Parenting Plan as well as multiple Motions to Alter or Amend Judgment dealing with issues that the court previously decided in September, 2013." In his brief, Father states, "*[i]f the Court agrees with the issue raised by [him] that it was error to make the child support modification retroactive, it is [Father's] position that the Court should also reverse the award of attorney's fees.*" (Emphasis added.) As discussed in Part IV(B) of this opinion, we do not agree with Father's position regarding the modification of support issue. Moreover, the award of attorney's fees is authorized by statute and, again, is an issue that is within the trial court's discretion. *See* Tenn. Code Ann. § 36-5-103(c). The trial court did not abuse that discretion.

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Travis G. McCosh. The case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE