**Brendi Erin KAPLAN (formerly Bugalla)**

**v.**

**John A. BUGALLA.**

Supreme Court of Tennessee,
at Nashville.

Oct. 5, 2005 Session.

April 13, 2006.

Gregory D. Smith, James G. Martin, III, and Aminah M. Collick, Nashville, Tennessee, for the appellant, Brendi Erin Kaplan.

David W. Garrett, Nashville, Tennessee, for the appellee, John A. Bugalla.

## OPINION

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

This case involves a post-divorce petition to modify child support to include payment of the children's extraordinary educational expenses. The trial court denied relief, and the Court of Appeals affirmed. We accepted this case to determine whether an obligee-parent is required to prove a "significant variance", as defined in the Child Support Guidelines, in the obligor-parent's income before the trial court can order the obligor-parent to pay a portion of the children's private school tuition and expenses. We hold that the "significant variance" standard is inapplicable to a modification of child support for payment of extraordinary educational expenses. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## FACTUAL & PROCEDURAL BACKGROUND

The parties, Brendi Kaplan (formerly Bugalla) and John A. Bugalla, were divorced by a final decree entered on May 10, 2002. The final decree incorporated the parties' marital dissolution agreement, as well as the parenting plan agreed to by the parties.[1] Pursuant to the permanent parenting plan, Ms. Kaplan was named as the primary residential parent for the parties' two minor sons, A.J.B. (birth date: August 18, 1992) and Z.S.B. (birth date: January 25, 1995). Also pursuant to the permanent parenting plan, Mr. Bugalla was ordered to pay $4,000 per month as child support.

Prior to their divorce, the parties lived in Brentwood, Tennessee, and their two sons attended the University School of Nashville ("USN"), a private school. At the time of the divorce, however, both parties intended to move to Chicago. In fact, Mr. Bugalla, an executive with an insurance brokerage company, had moved to Chicago shortly before the final decree was entered. Because he technically was assigned to his employer's Chicago office during the time he worked in Nashville, Mr. Bugalla's move to Chicago did not affect his employment—he simply relocated. At the time of the divorce, Ms. Kaplan, an attorney, was working for a Nashville law firm. She intended to move with the children to Chicago after the divorce in order to be close to family members who resided in the Chicago area. Because both parties intended to move to Chicago, and

---

1. The Marital Dissolution Agreement, Parenting Plan, and Final Decree of Divorce, all entered in the trial court May 10, 2002, were not part of the original record on appeal and were not considered by the Court of Appeals. Pursuant to Tennessee Rule of Appellate Procedure 24(e), on October 11, 2005, we ordered the record to be supplemented to include them.

because they expected that the children would attend public schools in the Chicago area, the permanent parenting plan incorporated into the final decree contained the following provision: "PRIVATE SCHOOL EXPENSES: None."

On September 4, 2002, approximately four months after the divorce, Ms. Kaplan filed a "petition for contempt, to modify parenting plan, and for other relief." In pertinent part, Ms. Kaplan alleged that she had been unable to find comparable employment in the Chicago area and that she had been "unable to find suitable housing in an area of Chicago that would enable her to send the children to a good public school."[2] The petition asserted that Ms. Kaplan therefore had decided to remain in Nashville to continue her employment and to allow the children to continue attending USN. The petition stated that, as of the date of filing, the children had both started the 2002–2003 academic year at USN. The petition asked the court to increase Mr. Bugalla's child support obligation to pay a portion of the children's school tuition, fees and expenses.

The trial court conducted an evidentiary hearing on the petition, and both Ms. Kaplan and Mr. Bugalla testified. From their testimony, it is undisputed that their parenting plan was based upon the assumption that both parties were moving to Chicago and that the children would attend public schools there. As alleged in her petition, Ms. Kaplan testified that she had been unable to find comparable employment in Chicago and that she also had failed to find suitable housing. Ms. Kaplan stated that she therefore had decided to remain in Nashville.

Mr. Bugalla testified that his annual income at the time of the hearing was approximately $290,000 (approximately $280,000 in salary, plus an additional $9,000 to $10,000 per year in dividends from a stock investment plan of his former employer). Ms. Kaplan testified that she had been a salaried employee at the law firm, with an annual salary of approximately $87,500. She went on to state, however, that approximately one month before the hearing her employment status had changed. Due to a decrease in business for the law firm section in which she worked, her status changed from being a salaried employee to being a "contract employee" of the firm. As a contract employee, she was being paid $60.00 per hour by the firm, but she received no benefits. The record does not disclose her income for the short time that, as of the hearing date, she had worked on a contract basis.

Ms. Kaplan testified that the parties' two sons continued to attend school at USN. According to an exhibit submitted by Ms. Kaplan, the annual tuition for each child was, at the time of the hearing, approximately $10,000 for lower school tuition and $11,000 for middle school tuition, respectively. The exhibit indicated that the tuition for the 2003–2004 academic year would increase to approximately $10,700 and $11,700, respectively.

At the conclusion of the hearing, the trial court denied Ms. Kaplan's request to modify the child support award. The trial court's order ruling on the petition states, in pertinent part: "Ms. Kaplan's request for an order requiring Mr. Bugalla to con-

**2.** The petition raised a number of other issues concerning Mr. Bugalla's alleged non-compliance with various provisions of the Marital Dissolution Agreement. In addition, the petition alleged that Mr. Bugalla was "consistent-ly late in making his child support payments." All of those other issues were resolved either by the parties or by the trial court, and they are not at issue in this appeal.

tribute to the cost of the children's private education shall be, and is hereby, denied, unless one of the children develops a special problem where, for some extraordinary reason, he needs a private school."

The Court of Appeals affirmed the trial court's ruling. The intermediate court concluded that Ms. Kaplan, in order to obtain a modification of child support, was required by statute to show a "significant variance" between the amount of child support ordered on May 10, 2002, the date of the divorce, and the amount of child support sought on February 3, 2003, the date of the trial court's hearing on the petition. The Court of Appeals concluded that the evidence did not establish a significant variance and that Ms. Kaplan therefore was not entitled to a modification of child support.

## STANDARD OF REVIEW

■ Our review of the trial court's findings of fact is de novo upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 569–70 (Tenn.2002). The trial court's conclusions of law are reviewed de novo, with no presumption of correctness accorded to the decisions of the courts below. *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn.2004).

## ANALYSIS

### I. EXTRAORDINARY EDUCATIONAL EXPENSES

■ In *Barnett v. Barnett*, 27 S.W.3d 904 (Tenn.2000), we considered whether private school tuition is an "extraordinary educational expense" which the non-custodial parent should be required to pay *in addition* to the base child support calculated under the Child Support Guidelines. We first concluded that private school tuition *is* an "extraordinary educational expense," as that term is used in the Guidelines.[3] *Id.* at 907. We then went on to consider whether that expense must be added to the obligor's base child support calculated under the Guidelines. As stated in *Barnett*, the Child Support Guidelines in effect at that time provided, "[e]xtraordinary educational expenses ... *shall* be added to the percentage calculated in the above rule [setting out the percentage of net income to be paid as child support]." *Id.* (quoting Tenn. Comp. R. & Regs. 1240–2–4–.04(1)(c)) (emphasis added). Based upon that mandatory language, "shall be added", we held that extraordinary educational expenses must be added to the obligor's base child support calculated under the Guidelines. *Id. See also, Umstot v. Umstot*, 968 S.W.2d 819, 824–25 (Tenn.Ct.App.1997); *Dwight v. Dwight*, 936 S.W.2d 945, 950 (Tenn.Ct.App.1996).

We recognized in *Barnett* that "[t]he wholesale imposition of private school tuition on the obligor in these cases could result in a tremendous disparity in the obligor's relative percentage of income attributed as child support—even to the extent of absorbing every penny of the obligor's income." *Barnett*, 27 S.W.3d at 908. To avoid "an interpretation of the guidelines that would lead to an absurd result[,]" *id.*, we went on to state that "it is appropriate to consider the income of the custodial parent in considering whether a downward deviation from the total child

---

**3.** As we stated in *Barnett*, "[t]he guidelines appear to equate 'extraordinary' with 'additional' or 'exceeding the usual.'" 27 S.W.3d at 907. In that regard, the trial court in the pending case erred in implying that there must be an extraordinary *reason* for sending the children to a private school. The children in this case had been attending private school prior to their parents' divorce, and we see no reason why Ms. Kaplan should be required to prove a "need" for continuing to send them to a private school.

support award (percentage plus extraordinary educational expense) would achieve equity." *Id.* at 909. We therefore held that imposing the entire amount of extraordinary educational expenses on the non-custodial parent could "constitute an 'unjust or inappropriate' application of the guidelines that would warrant a downward deviation. Downward deviation in this context would spread the cost of tuition equitably among [sic] the parties." *Id.*

 From our analysis in *Barnett,* it is clear that payment of extraordinary educational expenses is a separate component of an obligor's total child support obligation, that is, separate from the base child support calculated under the Guidelines. *Barnett* also makes it clear that the court can order the obligor to pay less than the full amount of a child's (or children's) extraordinary educational expenses, depending upon the proof in a particular case. While those two issues were resolved in *Barnett,* the question presented in the pending case is whether an obligee may seek modification of an existing child support order to require the obligor to pay any extraordinary educational expenses, *absent a showing of a "significant variance"* in the obligor's income.[4]

## II. MODIFICATION OF BASE CHILD SUPPORT ORDERS

The modification of court-ordered base child support is governed by section 36-5-101(g),[5] Tennessee Code Annotated (2005), which provides:

(1) Upon application of either party, the court shall decree an increase or decrease of support when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

(2) The necessity to provide for the child's health care needs shall also be a basis for modification of the amount of the order, regardless of whether a modification in the amount of child support is necessary.

The Child Support Guidelines in effect at the time of the hearing in this case provided:

For purposes of defining a significant variance between the guideline amount and the current support order pursuant to TCA § 36-5-101, a significant variance shall be at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month. Such variance would justify modification of a child

---

4. Like the pending case, *Barnett* also involved a petition to modify child support. In *Barnett,* however, *both* parties were seeking modifications of the father-obligor's child support payments. *Barnett,* 27 S.W.3d at 906 (stating that Ms. Barnett filed a petition to modify child support award and also stating, in footnote 1, that Mr. Barnett filed a counter-petition seeking a reduction in child support and alimony). No issue was raised in *Barnett* concerning the application of the "significant variance" standard to a modification based upon extraordinary educational expenses.

5. At the time of the trial court's hearing in this case, the child-support modification provision was contained in Tennessee Code Annotated § 36-5-101(a)(1) (Supp.2002). The current provision quoted above, however, does not differ substantively with the pertinent language in the former provision, and we therefore use the current statute in our analysis.

support order unless, in situations where a downward modification is sought, the obligor is willfully and voluntarily unemployed or underemployed. Upon a petition for adjustment by either party, the court shall increase or decrease the award amount as appropriate in accordance with these guidelines unless the significant variance occurs due to a previous decision of the court to deviate from the guidelines and the circumstances which caused the deviation have not changed.

Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (October 1997).[6]

■ As the Court of Appeals has noted, the "significant variance" standard has replaced the "substantial and material change in circumstances" standard previously applied to cases involving modifications of court-ordered child support.[7] *Turner v. Turner*, 919 S.W.2d 340, 342-43 (Tenn.Ct.App.1995). As the intermediate court wrote in another case, "the correct inquiry in a child support modification matter is not whether there is a material change of circumstances but whether there is a 'significant variance' between the current obligation and the obligation set by the Guidelines." *Huntley v. Huntley*, 61 S.W.3d 329, 335 (Tenn.Ct.App.2001).

■ Mr. Bugalla argues that, under section 36-5-101(g)(1) and the cases cited in the previous paragraph, Ms. Kaplan must first prove a "significant variance" before the court can modify his child support obligation. Ms. Kaplan argues in response that she does not need to prove a "significant variance" because her requested modification involves extraordinary educational expenses. For the reasons stated below, we agree with Ms. Kaplan's argument.

Section 36-5-101(g) authorizes a modification of child support "when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), *between the guidelines* and the amount of support currently ordered[.]" Tenn.Code Ann. § 36-5-101(g)(1) (emphasis added). The Guidelines, in turn, provide that a "significant variance" is determined by comparing "*the guideline amount* and the current support order[.]" Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (October 1997) (emphasis added). From the context of both the statute and the Child Support Guidelines, it is clear that the terms "between the guidelines" (used in the statute) and "the guidelines amount" (used in the Guidelines defining "significant variance") refer to the "minimum base" child support calculated based upon a percentage of the obligor's net income.[8] *See* Tenn. Comp. R. & Regs. 1240-2-4-.02(5) (October 1997) (stating, "[t]hese guidelines are a minimum base for

---

**6.** The Child Support Guidelines, including the Guidelines' definition of "significant variance," were substantially revised, effective January 18, 2005. Tenn. Comp. R. & Regs. 1240-2-4-.01 to .09 (2005). The revised Guidelines, however, provide that they "shall be applicable in any judicial or administrative action *brought ... on or after the effective date of these rules.*" Tenn. Comp. R. & Regs. 1240-2-4-.01(2)(a) (2005) (emphasis added). Because the pending petition was filed before January 18, 2005, the prior version of the Guidelines, quoted above, is the pertinent one for purposes of our analysis.

**7.** The "substantial and material change in circumstances" standard still applies in cases involving a modification of alimony. *See* Tenn.Code Ann. § 36-5-121 (2005).

**8.** We reiterate that this portion of our analysis is based upon the prior version of the Guidelines, which used the "flat percentage" model in determining the "minimum base" child support. The current Guidelines, which went into effect in January 2005, use the "income shares" model in determining the "basic child support obligation." *See generally* Tenn. Comp. R. & Regs. 1240-2-4-.03 (2005).

determining child support obligations. Factors justifying upward adjustments include expenses for health insurance coverage for the child ..., less than average overnight visitation being exercised by the parent paying support ..., *extraordinary educational expenses,* extraordinary medical expenses ..., and the like.") (emphasis added); and Tenn. Comp. R. & Regs. 1240–2–4–.03 ("Guidelines for Calculating Child Support Awards") (October 1997). In other words, the "guideline amount" does not include an increase in the total award ordered pursuant to Rule 1240–2–4–.04 ("Criteria for Deviation from Guidelines") (October 1997). We conclude that the "significant variance" provision in section 36–5–101(g)(1) pertains only to a modification of the "minimum base" child support calculated under the Guidelines and not to a modification for payment of extraordinary educational expenses.

## III. MODIFICATION FOR PAYMENT OF EXTRAORDINARY EDUCATIONAL EXPENSES

■ Having determined that the "significant variance" standard now applies only in the context of modifications of base child support, we conclude that, at the time this case was filed, the "substantial and material change in circumstances" standard applied in cases involving modifications of child support for payment of extraordinary educational expenses.[9]

Applying the "substantial and material change in circumstances" standard to the pending case, we conclude that Ms. Kaplan

has met that standard. The evidence is undisputed that the parenting plan and the final decree, which did not provide for payment of private school tuition, were based upon the parties' expectations that they both would be living in the Chicago area and that their sons would be attending public school(s) there. Because Ms. Kaplan was unable to find suitable employment and housing in the Chicago area, she decided to remain in Tennessee, which resulted in the two sons remaining in private school in Nashville. Under these facts, we find that a "substantial and material change in circumstances" has occurred and that Mr. Bugalla's child support obligation should be modified to provide for payment of a portion of the children's extraordinary educational expenses. We remand the case to the trial court for a determination as to the appropriate amount of that modification, consistent with the principles set out in *Barnett.*

## IV. ATTORNEY FEES

Ms. Kaplan argues that she is entitled to the award of attorney fees incurred on appeal. *See* Tenn.Code Ann. § 36–5–103(c); *Alexander v. Alexander,* 34 S.W.3d 456, 466 (Tenn.Ct.App.2000). Such a fee award is not primarily for the benefit of the primary residential parent but rather to facilitate the child's access to the courts. *Sherrod v. Wix,* 849 S.W.2d 780, 784 (Tenn.Ct.App.1992). Based on the facts presented to the court in this matter, we conclude that Ms. Kaplan is entitled to some relief. On remand the trial court

---

**9.** In 2005 the child support guidelines were revised further to provide that additional support for extraordinary educational expenses should be calculated separately and "may" be added to the basic support award. Tenn. Comp. R. & Regs. 1240–2–4–.07(2)(d) (2005). "They also provide that these expenses should be considered on a case-by-case basis and that the courts should also consider whether the private elementary or secondary schooling is 'appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and the child were living together.' Tenn. Comp. R. & Regs. 1240–2–4–.07(2)(d)(1)(ii)." *Richardson v. Spanos,* No. M2003–01139–COA–R3–CV, 2005 WL 2477525, *7, 189 S.W.3d 720 (Tenn.Ct.App. October 5, 2005).

shall conduct a hearing to determine the extent to which an award of attorney's fees is appropriate in this case.

## CONCLUSION

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion. The costs of this appeal are taxed to the appellee, John A. Bugalla, and his sureties, for which execution may issue if necessary.