# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 12, 2014 Session

## PAMELA BARKLEY, ET AL. V. SHELBY COUNTY BOARD OF EDUCATION

**Appeal from the Circuit Court for Shelby County**
**No. CT00555210     Robert Samual Weiss, Judge**

---

**No. W2014-00417-COA-R3-CV - Filed March 18, 2015**

---

Action under the Tennessee Governmental Tort Liability Act to recover for injuries sustained in a slip and fall at a school operated by the Shelby County Board of Education. In a bench trial, the court held the school board 60% liable and plaintiff 40% liable and awarded plaintiffs damages totaling $29,400. The Board of Education appeals the holdings that it was negligent, that its immunity was removed, and that the plaintiff was less than 50% at fault for her injury. While the evidence does not preponderate against the finding that plaintiff fell on water in the school hallway, there is no evidence that the Board had notice of the water; consequently, we reverse the judgment of the trial court and dismiss the case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Dismissed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P. J., W. S., and W. MICHAEL MALOAN, SP., J., joined.

Valerie B. Speakman, Arlington, Tennessee, for the appellant, Shelby County Board of Education.

David A. McLaughlin, Memphis, Tennessee, for the appellees, Pamela Barkley and James Barkley.

# MEMORANDUM OPINION[1]

This is an action under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 *et seq.*, ("GTLA") to recover for injuries sustained by Pamela Barkley, the grandmother of two children who attended Riverdale Elementary School in Memphis, when she fell in a hallway at a Grandparent's Day event; the school is operated by the Shelby County Board of Education ("the Board"). Following trial, the court made findings of fact and conclusions of law, on the basis of which it assessed damages at $45,000 for Ms. Barkley and $4,000 for the loss of consortium claim of her husband, James. The court determined that Ms. Barkley was 40% at fault, reduced the damages accordingly, and entered judgment for the plaintiffs in the total sum of $29,400.

School Board appeals, articulating the following issues:

1. Whether the proof in the record preponderates against the Trial Court's finding that the SCBE was negligent.
2. Whether the trial court erred by finding that the SCBE is not immune to suit pursuant to Tenn. Code Ann. § 29-20-205, or in the alternative the public duty doctrine.
3. Whether the record preponderates against the trial court's finding that the Plaintiff was not at least fifty percent at fault for her injury.

## I. STANDARD OF REVIEW

Because this case was tried without a jury, our review of the trial court's findings of fact is *de novo*, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006). Our review of the trial court's determinations regarding questions of law is *de novo* with no presumption of correctness. *Kaplan.* 188 S.W.3d at 635.

---

[1] Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

## II. DISCUSSION

Tenn. Code Ann. § 29-20-201(a) sets forth the general rule of governmental immunity: "Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Latter statutes remove immunity for negligent operation of motor vehicles (Tenn. Code Ann. § 29-20-202), unsafe streets and highways (Tenn. Code Ann. § 29-20-203), dangerous structures (Tenn. Code Ann. § 29-20-204), and negligent acts of employees (Tenn. Code Ann. § 29-20-205). As noted by the court in *Traylor ex rel. Traylor v. Shelby Cty. Bd. Of Educ.*:

> In a premises liability action against a governmental entity, the plaintiff must prove that: (1) the governmental entity owns and controls the location or instrumentality alleged to have caused the injury; (2) a dangerous, defective, or, in the case of sidewalks, unsafe condition caused the injury; (3) the governmental entity had actual or constructive notice of the dangerous condition; and (4) the governmental entity breached either its duty to eliminate the condition or its duty to warn of the condition.

*Traylor*, No. W2013-00836-COA-R3-CV, 2014 WL 792131, at *8 (Tenn. Ct. App. Feb. 27, 2014), appeal denied (Aug. 26, 2014) citations omitted).

In its ruling, the court made several findings of fact relative to the circumstances of Ms. Blakely's fall pertinent to the issues in this appeal:

> 10. To reach a trash can, Plaintiff walked past a hand washing station that was in the hallway outside the boys' restroom.
> 11. Pamela Barkley was wearing "crocs" when she slipped and fell in water near the hand washing station.
> * * *
> 13. Syndi [sic] Whitaker also stated that she saw water in the area by the boy's hand washing station and that people had tracked through it. She testified that there is soap available at the hand washing station.
> 14. Pamela Barkley slipped and fell which resulted in her suffering an anterior hip dislocation and required medical treatment and physical therapy.

Evidence at trial, exclusive of medical proof, consisted of the testimony of plaintiffs; their granddaughter Sydney Whitaker; John Smith, Director of Facility Services for the Board; James Smith, plant manager at Riverdale; David Carlisle, retired principal of

Riverdale; Pat Miller, teacher at Riverdale; Rose Van Pelt, retired librarian at Riverdale; Joseph Bond, Riverdale's principal at the time of trial; and seven photographs and one diagram which was prepared by Ms. Barkley and introduced at her deposition. The evidence was conflicting, particularly with respect to whether Ms. Barkley fell on water which was on the floor, as testified to by Ms. Barkley and her granddaughter, or whether the shoes she was wearing caused her to fall and spill a cup she had in her hand, thereby accounting for the water on the floor. Applying the standard of review at Tenn. R. App. P. 13(d), the evidence does not preponderate against the finding that Ms. Barkley fell in water in the hallway near the washing station adjacent to the boys' restroom. There is, however, no evidence to support a determination that the Board had notice of water on the floor at or near the location of Ms. Barkley's fall, sufficient either to remove its immunity or to otherwise establish liability.

We have been cited to no evidence that the Board had actual notice of water on the floor; consequently, we review the evidence relative the court's conclusion that the Board had constructive notice.[2]

Ms. Van Pelt, who was in the hall when Ms. Barkley fell, testified:

Q. Okay. And can you tell us, did you see any water or substance in the floor before Mrs. Barkley fell?
A. No, ma'am.
***
Q. Okay. And did you see anything in her hand?
A. Yes, ma'am, she had a cup in her hand.
Q. Okay. And what happened to the cup when she fell?
A. It fell, but I don't remember what, you know, happened to it other than she had it in her hand and it, I think it fell in the floor.
Q. Okay. But you're saying you don't know what happened after - -
A. No, no, I don't know.
Q. - - it hit the floor?
A. No, I don't know what happened to it.

---

[2] In the conclusions of law portion of its ruling, the court held:

3. Because the hand washing station is located in the common hallway, the Shelby County Board of Education is on actual and constructive notice of water and soap accumulating in the area where grammar school children wash their hands and the public travels.

Q. Got you. Okay. Now, Ms. Van Pelt, in the whole time that you worked at Riverdale school, did you ever see anybody fall here where Mrs. Barkley fell?
A. No, ma'am.

Ms. Miller, whose classroom was in the same hall near the hand washing station, testified:

Q. . . . When you saw Mrs. Barkley did you see anything next to her or near her on the floor?
A. In front of her it looked it, it appeared to me that she had a Chick-fil-A cup at one point and there was water in front of her. She was facing the lockers.
Q. Okay. Did you look to see if there was any water other than what appeared to come from her cup?
A. I most certainly did, yes.
Q. And what did you determine?
A. That I saw nothing that would indicate water was on the floor.
Q. Okay. How many times had you come in the area where you saw Mrs. Barkley fall or in the boys hand washing station on November 19, 2009?
A. How many times?
Q. Yes, ma'am.
A. Let's see, every time the boys go to the restroom, every time we go - - every time I leave the room. Number of times?
Q. Could it be dozens?
A. Dozens.
Q. All right.
A. Most likely, yes, ma'am.
Q. Now, on November 19, 2009 did you see any water in the floor other than from Mrs. Barkley's cup in the hallway?
A. No ma'am.
Q. Okay. And on November 19, 2009 did you see any water at the boys hand washing station?
A. I did not.
***
Q. Okay. Now, you made this inspection for water while you were caring for her?
A. I looked over to the sink area and did not see water.

James Smith testified:

Q. Mr. Smith, when you came upon Mrs. Barkley in the hallway, did you see anything laying on the floor next to her?

5

A. It was a cup laying beside her.

Q. Okay. Could you tell if there was any water in that cup or ice in that cup?

A. I don't think I saw any ice, but the water was by the cup.

Q. Okay.

A. So I went and, you know, dried it and got up the water.

Q. So the water that you saw on the floor that you discussed earlier was next to the cup that you saw lying on the floor?

A. Right.

Q. Okay. And on the day, on Grandparents Day before you saw Mrs. Barkley lying in the perpendicular hallway that you marked on the photograph, had you seen any water in that hallway?

A. No.

Q. You didn't see any water in the hallway where you put the red X, correct, other than what was spilled by the cup?

A. No water in the hallway.

Mr. Carlisle, who had been principal at Riverdale for twenty-nine years, testified as follows:

Q. So rarely at the boys hand washing station would there be any water on the floor, correct?

A. Well, when you say any water, you're talking about a dot or a spot, you know, I'm talking about water, there would not be lots of water at any time, that's correct.

Q. Would there be some water at any given time?

A. Well, like I said, it could be a dot of water, a spot of water, I can't tell you that. But I can tell you that the water standing on the floor didn't stand for long. That room is right next to the assistant principal's office, and so we were in and out all the time. If there were something on the floor we would have hollered for Mr. Smith or take care of it ourselves.

***

Q. Okay. And the entire time that you worked at Riverdale school did you see or hear of anyone who fell where Mrs. Barkley fell?

A. No. In fact, no one fell at any hand washing area, which is the reason why we didn't have any anti-slip measures because it just had never happened, it never was a need.

Plaintiffs presented no proof as to the length of time the water or other substance upon which Ms. Barkley apparently fell had been present or any other fact upon which to conclude that the Board had constructive notice of the specific condition. General knowledge that such a condition may exist does not constitute constructive knowledge of a specific

6

condition.  *See Hardesty v. Service Merchandise Co., Inc.*, 953 S.W.2d 678 (Tenn. Ct. App. 1997).  In the absence of such proof, we respectfully disagree with the trial court's holding that the School Board had notice of the condition upon which Ms. Barkley slipped and fell. Accordingly, there is no basis upon which to hold the School Board liable for her injuries.

This holding pretermits all other issues raised on appeal.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is reversed and the case dismissed.

_____
RICHARD H. DINKINS, JUDGE