# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 16, 2015 Session

## WEST WARREN-VIOLA UTILITY DISTRICT v. JARRELL ENTERPRISES, INC.

**Appeal from the Circuit Court for Coffee County**
**No. 40112      Vanessa Jackson, Judge**

_____

**No. M2013-02217-COA-R3-CV – Filed April 26, 2016**
_____

Utility district brought action to condemn a parcel of real property which was located outside the district's boundaries in order to construct a water storage tank, associated piping, and an access road. The trial court denied the petition, and the district appeals. Finding that the district is given the power in the Utility District Law to construct and maintain its system, and that the unrebutted evidence shows that the district was not attempting to expand the boundaries of its service area, we reverse the judgment of the trial court and remand the case for a hearing on the damages due the property owner.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P. J., M. S., and ANDY D. BENNETT, J., joined.

Gregory L. Cashion, Kenneth S. Schrupp, Donald L. Scholes, Benjamin A. Gastel, Nashville Tennessee, Ben Newman, McMinnville, Tennessee, for the appellant, West Warren-Viola Utility District

James C. Cope, Murfreesboro, Tennessee, for the appellee, Jarrell Enterprises, Inc.

## OPINION

### I.  FACTUAL AND PROCEDURAL BACKGROUND

This is an action brought by the West Warren-Viola Utility District of Warren and Coffee Counties ("West Warren") pursuant to Tenn. Code Ann. § 7-82-305 to condemn property for the purpose of constructing a water storage tank.

West Warren has operated a water and sewer system since July 28, 1982; as currently configured, it adjoins the Hillsville Utility District ("Hillsville"), which provides services in eastern Coffee County.  In early 2008 West Warren filed a petition to expand the geographic boundaries of the district to include portions of Coffee County, pursuant to Tenn. Code Ann. §§ 7-82-201, -202, and -603 and on May 5, 2008, John Pelham, County Executive of Warren County, and David Pennington, County Mayor of Coffee County, entered an order granting the petition.[1]  The order recited that, at the time the petition was filed, "[p]ursuant to Tenn. Code Ann. § 7-82-302(a), the District already provides water service to substantially all of the areas within the proposed expanded boundaries in Coffee County."

On January 2, 2013, West Warren filed a petition pursuant to Tenn. Code Ann. §§ 7-82-305 and 29-17-901 seeking to condemn a portion of land owned by Jarrell Enterprises, Inc., ("Jarrell") for purposes of constructing a water storage tank.  Jarrell answered, denying that the property should be condemned.  A hearing was held on May 16, 2013 and an order entered on May 23 denying possession.  West Warren filed a Motion to Alter or Amend the Order, in which it also sought to offer additional evidence; the court entered an order August 21 denying the motion.[2]  On September 24 the court entered an order granting attorney's fees to Jarrell.

West Warren appeals, raising the following issues:

1.  The trial court erred as a matter of law by ruling that building the proposed water tank would constitute "providing services."

---

[1] The order also renamed the district as the West Warren-Viola Utility District of Warren and Coffee Counties, Tennessee, the name in which this action was initiated.  In the course of these proceedings, the name has been shortened to West Warren-Viola Utility District; the legal name of the district remains that established in the May 5, 2008 order.

[2] In an order entered August 5, the court stated "the pending motion to alter or amend will be decided upon legal arguments and papers with no additional evidence and that the possession hearing and record of May 16, 2013 is closed so there will be no subsequent hearing or evidence on the possession."

2.  The trial court erred as a matter of law in ruling that [West Warren] cannot condemn the property at issue.

3.  The trial court erred as a matter of law in deciding not to accept any additional evidence.

4.  The trial court's ruling that the proposed water tank site is not within [West Warren's] geographic boundary is not supported by a preponderance of the evidence.

5.  The trial court erred in awarding attorney's fees and costs to Defendant/Appellee.

Jarrell articulates the issues presented as follows:

> Whether the trial court was correct in denying [West Warren's] Petition for Condemnation where the evidence presented to the trial court failed to establish that the Appellee's property was within the territorial boundaries of [West Warren] and not within the boundaries of another utility district. In addition, Appellee raises the issue of whether [West Warren] should be bound by representations it made when seeking to expand into Coffee County and the 2008 Recreation Order recreating [West Warren].

## II. STANDARD OF REVIEW

Review of the trial court's findings of fact is *de novo* upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006). Review of the trial court's conclusions of law is *de novo* with no presumption of correctness afforded to the trial court's decision. *See Kaplan*, 188 S.W.3d at 635.

## III. DISCUSSION

The Utility District Law of 1937 governs the creation, management, and operation of utility districts, and is codified at Tenn. Code Ann. §§ 7-82-101-804; Part 3 of the statute sets forth the operation and powers of such districts. Tenn. Code Ann. § 7-82-302 grants utility districts the power and authority "to acquire, construct, reconstruct, improve, better, extend, consolidate, maintain and operate such systems, within and without the district." Districts are granted the power of eminent domain by Tenn. Code Ann. §§ 7-82-304(a)(3)[3] and -305.[4]

---

[3] Tenn. Code Ann. § 7-82-304(a)(3) provides:
    (a) Any district created pursuant to this chapter has the power to:
    * * *

3

Pertinent to the issues presented in this case, Tenn. Code Ann. § 7-82-301(a)(1)(B) provides:

> So long as the district continues to furnish any of the services that it is authorized to furnish in this chapter, it shall be the sole public corporation empowered to furnish such services in the district, and no other person, firm or corporation shall furnish or attempt to furnish any of the services in the area embraced by the district, unless and until it has been established that the public convenience and necessity requires other or additional services;. . .

The trial court acknowledged West Warren's right under Tenn. Code Ann. § 7-82-304(a)(3) to condemn the Jarrell property; the court held, however, that the right was "limited and may only be used in carrying out the purpose for which the utility district was created." With respect to that purpose the court stated:

> The purpose for which the expanded West Warren-Viola Utility District was created can be found in the Order (Exhibit No. 4), signed by the County Executive of Warren County and the County Mayor of Coffee County, which provides that the geographic boundaries of the District were expanded for the purpose of furnishing water and sewer services in those portions of Coffee County which were already being served by the District. There was no

---

(3) Acquire by purchase, gift, devise, lease or exercise of the power of eminent domain or other mode of acquisition, hold and dispose of real and personal property of every kind within or without the district, whether or not subject to mortgage or any other liens;

[4] Tenn. Code Ann. § 7-82-305 states:

Any district has the power to condemn either the fee, or such right, title interest, or easement in the property, as the board may deem necessary for any of the purposes mentioned in this chapter, and such property or interest in such property may be so acquired, whether or not the property or interest is owned or held for public use by corporations, associations or persons having the power of eminent domain, or otherwise held or used for public purposes; provided, that such prior public use shall not be interfered with by this use. Such power of condemnation may be exercised in the mode or method of procedure prescribed by title 29, chapter 16, or in the mode or method of procedure prescribed by any other applicable statutory provisions now in force or hereafter enacted for the exercise of the power of eminent domain; provided, that where title to any property sought to be condemned is defective, it shall be passed by decree of court. Where condemnation proceedings become necessary, the court in which such proceedings are filed shall, upon application by the district and upon the posting of a bond with the clerk of the court in such amount as the court may deem commensurate with the value of the property, order that the right of possession shall issue immediately or as soon and upon such terms as the court, in its discretion, may deem proper and just.

evidence produced to establish that the Petitioner had ever furnished water or sewer services on the Defendant's property. As previously stated, the Defendant's farm is serviced by the Hillsville Utility District and has been for many years. Thus, the purpose for which the expanded West Warren-Viola Utility District was created does not include furnishing services on the Defendant's property, including the "Property" in question. As previously stated, the Court finds that the construction and maintenance of the water tank, water lines and access road are within the definition of utility services. Therefore, engaging in the construction and maintenance of utility services on Defendant's property exceeds the purpose for which the West Warren-Viola Utility District was created, and T.C.A. § 7-82-304 only permits the Defendant to use the power of eminent domain to condemn the Defendant's property in furtherance of purposes for which it was created.

West Warren contends that the trial court erred in holding that the construction of the water tank and piping on the property in question constituted "furnishing services" to that property within the meaning of Tenn. Code Ann. § 7-82-301(a)(1)(B); and in interpreting the 2008 recreation order to mean that West Warren cannot build utility facilities outside of its geographic boundaries as permitted by Tenn. Code Ann. § 7-82-302(a).

With respect to the application of Tenn. Code Ann. § 7-82-301(a)(1)(B), the court held that "the plain reading of this statute prohibits [West Warren] from invading or encroaching upon the territory serviced by Hillsville Utility District to furnish any water utility services unless and until it has been established that the public convenience and necessity require additional services" and that West Warren had not established that it followed the statutory procedure "to establish that public convenience and necessity require the construction of the water tank, water lines and access road on the Defendant's property in the area served by the Hillsville Utility District." While the court's reading of the statute is correct, we do not agree with the application of it. The evidence establishes that West Warren does not plan to "invade or encroach" on Hillsville's service area; neither does it support the determination that West Warren would be providing services on the site of the tank or outside of its existing service area. Thus, the public necessity need not be established.

The court acknowledged that the Utility District Law does not "enumerate the activities that fall within the definition of utility services provided by a utility district" and held that "the construction and maintenance of a water tank for water storage purposes, as well as the accompanying water lines and access road, are within the definition of utilities services normally provided by a utility district." We do not read Tenn. Code Ann. § 7-82-301(a)(1)(B) as prohibiting West Warren from constructing the tank. As we consider this

5

issue, mindful that § 7-82-301 is part of the Utility District Law, we employ the principles of statutory construction.

Construction of a statute is a question of law which appellate courts review *de novo*, without a presumption of correctness of the trial court's findings. *Barge v. Sadler*, 70 S.W.3d 683, 686 (Tenn. 2002). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." *Nat'l Gas Distributors, Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991). As our Supreme Court has said, "[w]e must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center, Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001) (citing *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)). When construing statutes that are part of a statutory scheme, we are also directed to look to the context of the particular provision. Our Supreme Court has made the following observation:

> When statutory provisions are, as in this case, enacted as part of a larger Act, 'we examine the entire Act with a view to arrive at the true intention of each section and the effect to be given, if possible, to the entire Act and every section thereof. Where different sections are apparently in conflict we must harmonize them, if practicable, and lean in favor of a construction which will render every word operative.'

*Hill v. City of Germantown*, 31 S.W.3d 234, 238 (quoting *Bible & Godwin Constr. Co. v. Faener Corp.* 504 S.W.2d 370, 371 (Tenn. 1974)). In our analysis we are to "presume that the General Assembly chose its words carefully," *Tenn. Manufactured Housing Ass'n. v. Metro. Gov't.*, 798 S.W.2d 254, 257 Tenn. Ct. App. 1990), and to "give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." *Tidwell v. Collins*, 552 S.W.2d 674, 676-77 (Tenn. 1975).

As noted earlier § 7-82-302(a)(1) gives utilities the power to "conduct, operate and maintain a system for furnishing" water services; this power includes the authority to "construct, reconstruct, improve, . . . maintain and operate such systems." Tenn. Code Ann. § 7-82-301(a)(1)(B) protects the right of a district which is providing services to be the exclusive provider until such time as it is not doing so or additional services are needed. Reading these two statutes together, we are of the opinion that construction of the tank is clearly allowed by § 7-82-302(a)(1) and, under the facts presented, is not in conflict with the rights granted Hillsville in § 7-82-301. In including the construction of the tank within the scope of activities covered by the statute, the trial court broadly interpreted the words "furnish . . . services," as that term is used in Tenn. Code Ann. § 7-82-301; the court

extended the phrase and reached a construction that, in light of the entire statutory scheme, is unreasonable. *See Scott*, 49 S.W.3d at 286.[5]

The holding that Tenn. Code Ann. § 7-82-301(a)(1)(B) prohibits the construction of the tank also runs counter to the trial testimony.

Anthony Pelham, an engineer with the James C. Haley Company, which performed consulting engineering work relative to the project, testified that West Warren had 1.5 million gallons of storage capacity and an average daily flow of water greater than 1.6 million gallons; that West Warren had been cited by the Tennessee Department of Environment and Conservation for being in violation of the requirement that the minimum storage capacity be the daily average of consumption for the district; and that the purpose of the tank would be to provide the necessary storage capacity. Mr. Pelham testified that the primary consideration in selecting the site was the elevation, which provided a "natural" and "ideal" place for the construction of the tank; that, in addition to the elevation, locating the tank on the property would allow service lines to run west on Highway 55; and that a portion of the service lines would run parallel to existing Hillsville service lines but would also extend to areas that had no water services available inside the district.[6] Mr. Pelham further testified that he advised the West Warren and Hillsville districts that customers that were being served by Hillsville and any homes adjacent to the existing Hillsville lines would not be able to be served by West Warren and that Hillsville would continue to provide the services it was providing; and that "anything that extended into new areas would have to be something to be handled between the two utility districts at that time."

Howard Pelham, General Manager of West Warren, testified that the utility served approximately 3,100 customers in Warren County, 2,500 in Coffee County, and 400 collectively in Cannon and Grundy counties. When asked about discussions he had with representatives of Hillsville regarding West Warren's operations after the tank was constructed, Mr. Pelham testified:

> Q. However, did you have discussions with Hillsville about their serving within the boundaries as - -
> A. Verbal communication as they were told that we would not serve anyone they were serving. We would not attempt to serve anyone they were serving

---

[5] The legislature included "construction" in the specific powers delineated at Tenn. Code Ann. § 7-82-302(a)(1); if it meant to include "construction" within the ambit of § 7-82-301(a)(1)(B), it could have done so.

[6] It is not apparent whether Anthony Pelham was referring to West Warren or Hillsville when he discussed areas that have no water available to them "inside the utility district."

other than if we were in that area to provide fire protection where they were unable to benefit their customers. We will not sell water to, sell a tap to, or serve anyone in their service area.

Q. Is it your intent to use the water line to serve present customers of Hillsville?

A. No, sir.

Q. Is it your intent to use the tank and the new line to serve customers within the boundaries of the Hillsville Utility?

A. No, sir.

This unrebutted testimony establishes that, in constructing the tank, West Warren was not intending to violate Hillsville's rights as granted by § 7-82-301(a)(1)(B).[7]

Based on the plain reading of "furnishing services" within the context of the Utility District Law, and upon consideration of the evidence at trial, we conclude that Tenn. Code Ann. § 7-82-301(a)(1)(B) does not prohibit the construction of the tank. For the same reasons we hold that the construction of the storage tank outside West Warren's service area does not exceed the powers granted West Warren in Tenn. Code Ann. § 7-82-304.

Our holding in this regard pretermits the other issues raised by West Warren as well as the Jarrell's contention that the 2008 order "prevents [West Warren] from providing services, or constructing a water tank, on [Jarrell's] property."

## IV. CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court denying the petition and awarding attorneys' fees and costs to Jarrell, and remand the case for a hearing on damages due Jarrell.



RICHARD H. DINKINS, JUDGE

---

[7] In this regard, we note that Hillsville did not seek to intervene in the case.