IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2017 Session

## CITY OF LEBANON EX REL. PHILIP CRAIGHEAD v. DEREK M. DODSON

**Appeal from the Chancery Court for Wilson County**
**No. 2016-CV-74     C. K. Smith, Chancellor**

_____

**No. M2016-01745-COA-R3-CV**

_____

This appeal concerns the Tennessee Violence in the Workplace Act. After a citizen was disruptive at several city council meetings, the city filed a petition under the Act, seeking to enjoin the citizen from attending city council meetings and from contacting city officials. The trial court granted an ex parte temporary restraining order and, following an evidentiary hearing, granted an injunction for three years. On its own motion, the court also issued a three-year injunction "separate and apart" from the Act. Because the city failed to meet its burden of proof under the Act and there was no other basis on which to grant injunctive relief, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Luke A. Evans and Mary R. Hutto, Murfreesboro, Tennessee, for the appellant, Derek M. Dodson.

Andy Wright, Lebanon, Tennessee, for the appellee, City of Lebanon.

## OPINION

## I.

Under the City of Lebanon's charter, the mayor presides over all meetings of the city council. 1929 Tenn. Priv. Acts 2007, 2027. The meetings of the council, which are

required to occur at least once each month, follow an agenda. *Id*. at 2026. The agendas, except when the council is meeting in special session, include an item called "Communication from Citizens." During this period, citizens may address the council and make comments.

One such citizen, Derek Dodson, regularly attended the council meetings. And he frequently availed himself of the opportunity to make comments. For the most part, Mr. Dodson would address the council and sit down. But in more recent years, Mr. Dodson began accusing individuals of corruption and dishonesty. At the March 3, 2015 city council meeting, after he was allowed to speak for a while, the then mayor, Philip Craighead, requested that Mr. Dodson conclude his comments and sit down. Still Mr. Dodson persisted.

As captured by the minutes of the meeting, Mayor Craighead and Mr. Dodson engaged in the following colloquy:

| | |
|---|---|
| Mayor: | I am sorry, but you are kind of like a broken record from the week before. So, please make your comments and then sit down. |
| Mr. Dodson: | Oh, I'm not a broken record. I've got a lot of interesting information here, that you don't want exposed and it's about to get exposed right now. So, when the Bible Park arrived in town, it arrived in September of 2008 and it was here until March of 2009. You became Mayor in December of 2008. The Bible Park came into town in September as Hard Rock Park was going bankrupt. You supported that. They came into town with an economic impact study, not a feasibility study, but a sales pitch economic impact study which they provide the critical numbers for — |
| Mayor: | Your three minutes are up.[1] |
| Mr. Dodson: | They committed the same fraud at the Hard Rock Park. |
| Mayor: | Your three minutes are up. |
| Mr. Dodson: | Let me explain a concept for you Mayor Craighead — |

___

[1] Mayor Craighead later testified that citizen comments were generally limited to three minutes per speaker.

2

| | |
|---|---|
| Mayor: | I'm sorry but your three minutes are up. Your three minutes are up, sir. |
| Mr. Dodson: | Let me explain a concept for you. If you and I are in a bank, and it's getting robbed, and you are robbing a bank, all rules are off. I'm exposing your corruption, and the best you can do is have the police come and try to defend you from your corruption. Why are you going to put this man in a lawsuit? |
| Mayor: | Your three minutes are up. |
| Mr. Dodson: | Why are you putting this fine man — why are you putting this fine man in this position? |
| Mayor: | Your time is up, sir. |
| Mr. Dodson: | I'm not going anywhere. Let's make the news — let's do it! Let's do it! How many of you folks know that the Bible Park snake oilers — the Bible Park snake oilers are in partnership with your good — |

First the chief of police and then the fire chief moved to intervene, but Mr. Dodson refused to relinquish the podium, gripping its sides tightly. When the fire chief pulled the flexible gooseneck holding the microphone away from Mr. Dodson, he pulled it back. He continued to speak, even after the microphone was removed. Ultimately, officials had to escort Mr. Dodson from the meeting.

A similar incident occurred at the September 1, 2015 city council meeting. According to the meeting minutes, during extended commentary, Mr. Dodson made allegations of lies, deceit, fraud and corruption. Mayor Craighead called Mr. Dodson out of order. Then the following exchange took place:

| | |
|---|---|
| Mr. Dodson: | And I am now finished, except for one small thing — |
| Mayor: | You are out of order, sir. |
| Mr. Dodson: | — for the documented corruption that drove the Expo Center a majority of the County Commissioners gave themselves a raise doubling their pay. |
| Mayor: | Welcome to my world everybody. |

3

| Mr. Dodson: | You are a criminal still in office. That is your world. |
|---|---|
| Mayor: | Escort him out please. We have business to run and we don't need the interruptions. |

When a policer officer approached, Mr. Dodson left the podium, but then he darted back after a feint toward his seat.

On February 11, 2016, the city council met in special session. All council meetings are public, *id*. at 2028, but generally at special meetings no time is provided for public comment. Yet on the video of the special meeting, Mr. Dodson can be heard speaking while the meeting takes place, at one point telling the mayor to "shut up." The mayor requested that the police be summoned, but before their arrival, Mr. Dodson left the meeting of his own accord.

At the February 16, 2016 regular city council meeting, Mr. Dodson again rose to speak. Just over two minutes into his comments, he made a derogatory remark about the mayor. At that point, Mayor Craighead called Mr. Dodson out of order, and he instructed Mr. Dodson to sit down. Mr. Dodson continued to speak, claiming corruption and dishonesty. Mayor Craighead ordered Mr. Dodson to leave the room. When he asked why, Mayor Craighead said Mr. Dodson was a disruption.

Later that month, the City filed a verified petition for a temporary restraining order and permanent injunction under the Tennessee Violence in the Workplace Act. *See* Tenn. Code Ann. §§ 20-14-101 to -108 (2009 & Supp. 2017). The petition alleged that two City employees, who were required to attend the city council meetings as part of their jobs, feared for their safety based on Mr. Dodson's "increasingly threatening course of conduct." The petition also cited Mr. Dodson's arrest in a neighboring county, an incident in which Mr. Dodson photographed license plates of vehicles in the city hall parking lot, and documents that Mr. Dodson authored, which the petition described as "manifestos." The City requested that Mr. Dodson be enjoined from attending the city council meetings or from having any contact with city officials.

Based on the verified petition and the supporting affidavit of Mayor Craighead, the Chancery Court for Wilson County entered a temporary restraining order. The order enjoined Mr. Dodson "from attending Lebanon City Council meetings or having any contact with any Lebanon City officials." The order also enjoined Mr. Dodson from "com[ing] within five hundred (500) feet of any City of Lebanon property."

Mr. Dodson filed a motion to dismiss the petition for failure to state a claim on which relief can be granted, to dissolve the ex parte restraining order, and to strike portions of the City's petition. Following a hearing on Mr. Dodson's motion, the court ordered the City to file an amended petition complying with Tennessee Rule of Civil

4

Procedure 65.03(1)[2] and to post a $10,000 bond. Although it ordered the filing of an amended petition, the court also struck portions of the City's original petition that recounted incidents of violence at city council meetings in other locales.

A few days later, the court held an evidentiary hearing on the request for a permanent injunction. Mayor Craighead and several City employees testified. In addition to recounting the events at the council meetings, Mayor Craighead stated that Mr. Dodson's conduct raised safety concerns. He also stated that certain City employees had expressed concerns for their own safety in light of Mr. Dodson's conduct at the meetings. This testimony was confirmed by employees, who also testified that they feared for their safety.

Two City employees testified about an incident in 2014 or 2015 in which Mr. Dodson was observed driving slowly through a parking lot. The lot was commonly used by City employees. The employees saw Mr. Dodson taking photographs of the parked vehicles from his pickup truck. One of the employees was in the parking lot and flagged Mr. Dodson down. According to that employee, Mr. Dobson claimed "he was photographing because he was a private investigator, and he had been hired by someone's spouse because they suspected that they were cheating on them."

A captain with the City Police Department also testified. In September 2015, the captain "placed extra patrol" at the homes of Mayor Craighead and the county mayor. The captain did so upon learning that Mr. Dodson had been released from custody. Deputies with the Trousdale County Sheriff's Department had attempted to pull Mr. Dodson over for reckless driving, but rather than pull over, Mr. Dodson drove to the District Attorney General's office in Hartsville. Mr. Dodson ran into the office, where he was arrested. This behavior coupled with what he had personally observed of Mr. Dodson's behavior at council meetings prompted the captain to place the extra patrol at the mayor's home.

The captain had attended the majority of the meetings at which Mr. Dodson spoke. And the captain believed that Mr. Dodson's behavior at times made him subject to arrest.

---

[2] Because temporary restraining orders may be issued without prior notice, Tennessee Rule of Civil Procedure 65.03 specifies that such orders may only be issued if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition; and

> (B) the applicant's attorney (or pro se applicant) certifies in writing efforts made to give notice and the reasons why it should not be required.

Tenn. R. Civ. P. 65.03(1).

*See* Tenn. Code Ann. § 39-17-306(a) (2014) ("A person commits an offense if, with the intent to prevent or disrupt a lawful meeting, procession, or gathering, the person substantially obstructs or interferes with the meeting, procession, or gathering by physical action or verbal utterance."). But he acknowledged that Mr. Dodson was never arrested at the meetings.

At the conclusion of the hearing, the court announced that injunctive relief was appropriate. In its written order, the court granted the City a permanent injunction for the statutory maximum of three years because it found Mr. Dodson "committed the acts of unlawful violence, stalking, and intimidation" under the Act. *See* Tenn. Code Ann. § 20-14-105 (Supp. 2017). On its own motion, the court also granted the City a permanent injunction against Mr. Dodson "separate and apart from the injunction issued under the [Act]," which "shall last for a period of three years and shall run concurrently with the injunction issued under the [Act]."

## II.

In a non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). We review a trial court's conclusions of law de novo with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

Although he raises several issues on appeal, Mr. Dodson's issues all revolve around the propriety of the injunctive relief granted by the trial court. Because the temporary restraining order has expired and the case proceeded to trial on the merits, we limit our review to the grant of the permanent injunction.

The trial court granted the City a permanent injunction under the Tennessee Violence in the Workplace Act. Under the Act,

> [a]ny employer or employee who has suffered unlawful violence or a credible threat of violence from any individual . . . , which can reasonably be construed to have been carried out at the workplace, may seek a temporary restraining order and an injunction prohibiting further unlawful violence or threats of violence by that individual . . . at the workplace.

Tenn. Code Ann. § 20-14-102 (Supp. 2017).[3] As such, a court may grant a request for

---

[3] The Act also provides that "[n]othing in this chapter shall be construed as authorizing a court to

injective relief only if it finds by clear and convincing evidence that the person to be enjoined "engaged in unlawful violence or made a credible threat of violence." *Id.* § 20-14-105. The court did not find that Mr. Dodson's conduct constituted a "credible threat of violence," and the City did not contest this finding on appeal. So we consider whether there was clear and convincing evidence that Mr. Dodson "engaged in unlawful violence."

Tennessee Code § 20-14-101(5) provides an exclusive list of conduct that constitutes unlawful violence. Specifically, unlawful violence "means assault, aggravated assault, stalking, intimidation, or extortion as prohibited by §§ 39-13-101 [assault], 39-13-102 [aggravated assault], 39-17-315 [stalking], 39-17-309 [intimidation] and 39-14-112 [extortion]." *Id.* § 20-14-101(5) (Supp. 2017). Here, the court found that Mr. Dodson committed the acts of stalking and intimidation against the City employees. We review each finding in light of the statutory definitions of those terms.

"Stalking" is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." *Id.* § 39-17-315(a)(4) (Supp. 2017). The "course of conduct" element of that definition requires a showing that the person to be restrained engaged in "a pattern of conduct composed of a series of two (2) or more separate, noncontinuous acts evidencing a continuity of purpose, including, but not limited to, acts in which the defendant . . . follows, monitors, observes, surveils, threatens, or communicates to a person, or interferes with a person's property." *Id.* § 39-17-315(a)(1).

Here, the court found Mr. Dodson, "at least, stalked the one time taking pictures" and acknowledged there was only "one [incident] of stalking." And the evidence does not preponderate against a finding that Mr. Dodson took pictures of license plates in the parking lot on one occasion. But because a finding of stalking requires proof of at least two or more separate incidents "involving repeated or continuing harassment of another individual," the evidence failed to establish that Mr. Dodson engaged in the stalking of City employees.

"Intimidation" under the Act means the offense of intimidating others under the criminal code. *Id.* § 20-14-101(5). The criminal code punishes "intimidating others from

issue a temporary restraining order or injunction prohibiting speech or other activities that are protected by the constitutions of this state or the United States." Tenn. Code Ann. § 20-14-102. On the basis of this provision, Mr. Dodson argues the Act cannot be applied to him. The City argues that it seeks to restrain Mr. Dodson's conduct, not his speech or some other constitutionally protected right. In light of the outcome of our examination of the trial court's factual findings, we do not reach this issue.

7

exercising civil rights." *Id.* § 39-17-309(b) (2014). Specifically, a person commits this offense of intimidation if he

> (1) Injures or threatens to injure or coerces another person with the intent to unlawfully intimidate another from the free exercise or enjoyment of any right or privilege secured by the constitution or laws of the state of Tennessee;
>
> (2) Injures or threatens to injure or coerces another person with the intent to unlawfully intimidate another because that other exercised any right or privilege secured by the constitution or laws of the United States or the constitution or laws of the state of Tennessee;
>
> (3) Damages, destroys or defaces any real or personal property of another person with the intent to unlawfully intimidate another from the free exercise or enjoyment of any right or privilege secured by the constitution or laws of the state of Tennessee; or
>
> (4) Damages, destroys or defaces any real or personal property of another person with the intent to unlawfully intimidate another because that other exercised any right or privilege secured by the constitution or laws of the United States or the constitution or laws of the state of Tennessee.

*Id.* § 39-17-309(b)(1)-(4).

In its brief, the City concedes that it "produced no evidence of 'intimidation' at trial" as defined by Tennessee Code Annotated § 39-17-309(b). Based on our review of this record, we agree.

Because it failed to present clear and convincing evidence that Mr. Dodson engaged in unlawful violence, the City was not entitled to a permanent injunction under the Act. But here the trial court also issued an injunction "separate and apart" from the Act.

We conclude that the trial court had no basis on which to issue an injunction "separate and apart" from the Act. For its part, the City concedes that it was not entitled to a permanent injunction unless it prevailed under the Act, the only claim it relied upon in seeking injunctive relief. We agree. "Injunctive relief . . . is a remedy, not an independent cause of action." *Henke v. ARCO Midcon, LLC*, 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo. 2010). So a permanent injunction is available as a remedy only if an applicant prevails on the merits of a claim. *Curb Records, Inc. v. McGraw*, No. M2011-02762-COA-R3-CV, 2012 WL 4377817, at *4 (Tenn. Ct. App. Sept. 25, 2012); *see also* 42 AM. JUR. 2D *Injunctions* § 11, Westlaw (database updated Feb. 2018) ("For a

permanent injunction to issue, the plaintiff must prevail on the merits of his or her claim and establish that equitable relief is appropriate in all other respects.").

## III.

The City failed to prove by clear and convincing evidence that Mr. Dodson engaged in unlawful violence or made a credible threat of violence as required for the issuance of an injunction under the Tennessee Violence in the Workplace Act. And the City asserted no other claim for which the trial court could have granted injunctive relief. Thus, we reverse the judgment of the trial court.

_____
W. NEAL MCBRAYER, JUDGE