IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 17, 2018 Session

## ANDREA SCOTT, ET AL. v. CARLTON J. DITTO, ET AL.

**Appeal from the Circuit Court for Hamilton County**
No. 11C942          Ward Jeffrey Hollingsworth, Judge

———————————————————

### No. E2017-01356-COA-R3-CV

———————————————————

This is the second appeal of a case in which a parcel of property was sold by the City of Chattanooga at a delinquent tax sale. The property had earlier been sold at a foreclosure sale conducted by the holder of a deed of trust on the property. The successor in interest to the purchaser of the property at the foreclosure sale brought an action against the purchaser at the tax sale and others to quiet title to the property; the tax sale purchaser filed a counterclaim and cross-claim against two of the defendants. The trial court granted summary judgment to the foreclosure sale purchaser based on its determination that she was a bona fide purchaser without notice of the tax sale and that she had recorded her deed first; the court dismissed the cross-claims. The tax sale purchaser appealed and this Court affirmed the dismissal of the cross-claims and reversed the grant of summary judgment to the foreclosure sale purchaser, holding that there was a genuine issue of material fact as to whether she had notice of the tax sale purchaser's interest in the property prior to her purchase. Upon remand, the case was tried without a jury, and the trial court ruled in favor of the foreclosure sale purchaser, holding that she was a bona fide purchaser of the property without notice of the tax sale purchaser's claim of ownership. Tax sale purchaser appeals; finding no error, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court of Hamilton County Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and THOMAS R. FRIERSON, II, JJ., joined.

Carlton J. Ditto, Chattanooga, Tennessee, Pro Se.

Adam U. Holland and Phillip E. Fleenor, Chattanooga, Tennessee, for the appellees, Andrea Scott, and Tennessee Housing Development Authority.

James C. Davey, Chattanooga, Tennessee, for Hamilton County, Tennessee.

Phillip A. Noblett, Chattanooga, Tennessee, for City of Chattanooga, Tennessee.

David Winston Houston, IV, Nashville, Tennessee, for CitiMortgage, Inc. and Mortgage Electronic Registration Systems, Inc.

## OPINION

### I.   FACTUAL AND PROCEDURAL HISTORY

This is the second appeal of this dispute between two holders of conflicting claims of ownership of a residential lot in Chattanooga.  The pertinent facts were set forth in the opinion resolving the first appeal:

> The property at issue is a residence located at 3904 Dixie Circle in Chattanooga [("the Property")]. Tamara B. Taff owned the property in 2006. The property taxes due the City for 2006 were not paid. On January 30, 2007, Taff sold the property to Joey R. Sapp, Shannon Elizabeth Sapp, and Ray F. Sapp. Defendant CitiMortgage, Inc. (Lender) financed the purchase, and the Sapps executed a deed of trust in favor of Lender and defendant Mortgage Electronic Registration Systems, Inc. (MERS), which latter entity acted solely as a nominee for Lender. In 2007, the City of Chattanooga filed suit to collect unpaid taxes on the property.

> The Sapps defaulted on the deed of trust, and Lender initiated foreclosure proceedings in early 2010. On April 5, 2010, the foreclosure sale took place, and Lender was the high bidder. The same day, Lender and MERS conveyed their interest in the property to the Department of Housing and Urban Development (HUD), executing a trustee's deed in HUD's favor. This deed was executed on April 5, 2010; however, HUD did not record it until August 12, 2010.

> At an earlier time, on April 20 and 21, 2010, the City of Chattanooga served notice upon Lender and MERS respectively, notifying them of the pending tax sale of the property. The tax sale occurred on June 3, 2010. Ditto was the high bidder. The Hamilton County Chancery Court entered a decree confirming the tax sale on June 15, 2010, nunc pro tunc to June 3, 2010. Ditto did not record the decree in the Hamilton County register of deeds until June 24, 2011.

> On April 20, 2011, HUD sold the property to [Andrea] Scott. Scott recorded her deed on May 19, 2011, some thirty-six days before Ditto recorded the court's tax sale decree. After Ditto sent Scott a letter informing her that it was his position he was the rightful owner of the property, Scott

2

filed the instant lawsuit on July 28, 2011.[1] Her action to quiet title named as defendants Ditto, Lender, MERS, the City of Chattanooga, Hamilton County, and Shaun Donovan, Secretary of HUD. Ditto answered and filed a counterclaim.[2] He coupled it with a crossclaim against Lender, MERS, and the City of Chattanooga. The case was twice removed to federal court, which, on both occasions, remanded the case back to the trial court. While this case was still pending in the federal court, that court entered an order granting Scott's unopposed motion for a voluntary dismissal of her suit against the secretary of HUD. It does not appear that HUD has taken an active part in this litigation.

The trial court granted the motion to dismiss Ditto's crossclaim against Lender and MERS, finding that Ditto had no standing to challenge the foreclosure sale because he was neither a party to, nor a third-party beneficiary of, the contracts underlying the foreclosure. The trial court granted Scott summary judgment on the following bases: that she recorded her deed before Ditto recorded his muniment of title, i.e., the decree confirming the tax sale, and that Scott was a bona fide purchaser of the property without notice of the tax sale or Ditto's claim to the property. See Tenn. Code Ann. § 66-26-105 (2015) ("Any instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity ... that the party claiming under the subsequent instrument had full notice of the previous instrument."). In its final order, the trial court ordered that "to the extent the tax sale vesting title of the property located at 3904 Dixie Circle is invalidated or otherwise set aside by the Order of this Court, the Cross-Defendant City of Chattanooga shall reimburse Defendant Ditto [for monies paid by Ditto at the tax sale] as contemplated by [Tenn. Code Ann.] § 67-5-2504 (a)." . . .

---

[1] Ms. Scott sought a declaratory judgment that she:

[A]cquired her ownership interest in the subject property without any notice, inquiry notice, nor constructive notice of any unpaid taxes nor the ownership interests of the City, the County, and/or Ditto, there being no Lien Lis Pendens of record, and that Plaintiff thereby holds superior title to said subject property as bona fide purchaser for value and that the unrecorded ownership interests of the City, the County, and/or Ditto and all instruments reflecting the same are accordingly null and void as to Plaintiff's superior ownership interest.

Ms. Scott also sought to enjoin Mr. Ditto "from dispossessing Plaintiff[] from her Property."

[2] In his answer, Mr. Ditto responded that Ms. Scott failed to state a claim and did not own the property but only possessed a "right to redeem" the property. In his amended counterclaim, Mr. Ditto argued that he was entitled to lost rent damages as a result of Ms. Scott's possession of the property.

3

*Scott v. Ditto*, No. E2014-02390-COA-R3-CV, 2016 WL 4572507, at \*1-2 (Tenn. Ct. App. Aug. 31, 2016). We held that a genuine issue of material fact existed, specifically whether Ms. Scott had notice of Mr. Ditto's interest such as to preclude her status as a bona fide purchaser; accordingly, we vacated the grant of summary judgment to Ms. Scott and remanded the case for further proceedings relative to that issue. *Id.* at \*6.

Mr. Ditto filed a motion for summary judgment shortly before the trial which was held on April 4, 2017; the motion was not ruled on prior to trial. On May 24, the court entered its Memorandum Opinion and Order (the "May 24 Order"), holding that Ms. Scott's title had priority due to her status as a bona fide purchaser because she did not have notice of Mr. Ditto's title when she bought the property. Mr. Ditto moved to alter or amend the May 24 Order, asserting that (1) Ms. Scott did not have standing to maintain the action because she did not have an interest in the property at the time she filed the action; (2) that Tennessee's race-notice statute did not apply; and (3) that he was also entitled to reimbursement of the purchase price, with interest. The court entered an order on June 9 ("June 9 Order"), holding that Ms. Scott had standing[3] and that the applicability of the race notice statute had been resolved in the first appeal; the court declined to award interest on the purchase price as requested by Mr. Ditto.

Mr. Ditto moved to amend the June 9 Order, asking the court "to direct reimbursement of the purchase price plus accrued interest at the rate of Twelve (12%); in the alternative, grant Mr. Ditto a lien against subject property pursuant to Tenn. Code Ann. 67-5-2540(a)(1)." In an order entered June 22 ("June 22 Order"), the court denied the motion and certified that the June 22 Order was a final order.

Mr. Ditto appeals, raising seven issues which, for ease of analysis, we have consolidated.

## II.    STANDARD OF REVIEW

Review of the trial court's findings of fact is *de novo* upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise.

---

[3] The trial court amended the order to state:

> Mr. Ditto contends that when he purchased the property at a tax sale, there was nothing left for HUD to purchase at foreclosure or for Ms. Scott to purchase from HUD. As such, he continues to argue, Ms. Scott could not have been a property owner when she filed this lawsuit. The Court of Appeals, in effect, addressed this issue in its opinion in this case. The Court, dealing with the same set of facts as presented at trial, said the case was about "...whose claimed title has priority." At the trial of this matter, the Court decided Ms. Scott's title had priority. As stated at trial, there was no dispute that both parties had claims to the property. The decision was that Ms. Scott's claim was superior to that of Mr. Ditto. Ms. Scott had standing to bring this claim.

4

*See* Tenn. R. App. P. 13(d); *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006). If the trial court made no specific findings of fact, then we must look to the record to determine where the preponderance of the evidence lies. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). Review of the trial court's conclusions of law is *de novo* with no presumption of correctness afforded to the trial court's decision. *See Kaplan*, 188 S.W.3d at 635.

## III. ANALYSIS

### A

At the outset, we address Mr. Ditto's argument that the trial court limited the scope of issues at trial, as well as his arguments that the trial court erred in holding that the Tennessee race-notice statute applies in this case and that Ms. Scott had standing to bring this action.

Mr. Ditto argues in his brief on appeal that this Court issued a "general and non-specific" remand in the first appeal, and "the trial court unnecessarily limited the issues for consideration at trial, thereby denying Appellant his right to be heard with respect to his defense that Tennessee tax sale statutes and case law control this issue." This argument is without merit. In the first appeal, we held that there was a genuine issue of material fact that precluded summary judgment, namely, whether Ms. Scott had notice of Mr. Ditto's interest. *Scott*, 2016 WL 4572507, at *5. We vacated the grant of summary judgment and remanded the case for further proceedings. *Id.* The purpose of remand was to resolve the specific factual issue of whether Ms. Scott had notice of Mr. Ditto's interest, and the trial court properly limited the scope of the hearing.

Mr. Ditto also argues that the trial court erred in holding that Tennessee's race-notice statute applies. This issue was adjudicated in the first appeal, with this court affirming the trial court's holding that the race notice statute at Tennessee Code Annotated section 66-26-105 "governs the outcome of this case." *Id.* at *4, *6. Having been addressed in the first appeal, our previous resolution of the issue is the law of the case and will not be revisited in this appeal.[4]

---

[4] Our Supreme Court discussed the law of the case doctrine in *Memphis Publishing Company v. Tennessee Petroleum Underground Storage Tank Board*:

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. The doctrine applies to issues that were actually before the appellate court in the first

5

Mr. Ditto argues that the trial court erred in holding that Ms. Scott has standing to maintain this action. In this action to quiet title, inasmuch as Ms. Scott claimed an interest in the property, she had the necessary standing to bring the action. *See Cate v. Desh Investment Corp.*, No. M2011-02059-COA-R3-CV, 1993 WL 258780 at *1 (Tenn. Ct. App. July 12, 1993) ("Plaintiffs have standing to quiet title to realty in which they arguably have an interest."); *see also* 65 Am. Jur. 2d Quieting Title § 66 ("All parties with any claims to the property, or material interests that might be affected, are considered necessary and indispensable to an action to quiet title.").

Although Mr. Ditto does not complain that the holding that Ms. Scott did not have notice is not supported by the evidence we have reviewed the sufficiency of the evidence to support the judgment. In the May 24 Order, the trial court found that Ms. Scott "did not have notice of Mr. Ditto's tax sale title when she bought the property"; in reaching its conclusion, the court made the following findings:

> [W]hen Ms. Scott bought the property from HUD, there was no record of Mr. Ditto's title in the Register of Deeds. There was a mention of the tax sale on the website of the County Trustee. Ms. Scott, who was a credible witness, testified that she never saw the information from the website before she brought the property or registered her deed. The Trustee's website information was produced by Ms. Scott's counsel during this litigation, after he received it in the response to a subpoena issued to the title company. There was some testimony about whether the title company in Knoxville knew about the Trustee's website. However, the testimony was undisputed that Ms. Scott did not choose the title company and had no relationship with it. The title company was not acting as her agent. She testified that she was not shown the website document at the closing.
>
> Also, Ms. Scott produced the testimony of James Bondurant, an attorney who specializes in real estate matters and owns a title company. Mr. Bondurant agreed that Ms. Scott had no notice of the Trustee website. He was also asked about what the title company should have done with the

---

appeal and to issues that were necessarily decided by implication. The doctrine does not apply to dicta.

\* \* \*

Therefore, when an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court, and by an appellate court if a second appeal is taken from the judgment of the trial court entered after remand. . . .

975 S.W.2d 303, 306 (Tenn. 1998) (citations omitted).

information on the website. He testified that the next step would be to check the office of the Register of Deeds. In this case, there was no record of Mr. Ditto's ownership at the Register's office.

Upon our review of the testimony and documentary evidence, we have determined that the factual findings and the conclusion that Ms. Scott did not have notice are supported by a preponderance of the evidence.

B

Mr. Ditto argues that he was entitled to additional interest on the purchase price due to the continuing litigation. At the tax sale on June 3, 2010, Mr. Ditto paid $9,000.00 into the office of the Clerk and Master. Of that amount, $928.52 was paid to the City for the 2006 delinquent taxes, and the balance of $8,071.48 was held in escrow. In the Final Order entered October 3, 2014, the court ordered that "to the extent the tax sale vesting title of the property located at 3904 Dixie Circle is invalidated or otherwise set aside by the Order of this Court, the Cross-Defendant City of Chattanooga shall reimburse Defendant Ditto as contemplated by T.C.A. § 67-5-2504(a)." Mr. Ditto moved to amend the order to include an instruction to the Clerk and Master as to the disbursement of the funds. The Court granted the motion, and on November 4, 2014, ordered that the City of Chattanooga pay to the Clerk and Master $928.52 plus interest on $9,000.00 from June 3, 2010, and that the Clerk and Master distribute that amount, along with the $8,071.48 held in escrow, to Mr. Ditto. The City paid the funds into the office of the Clerk and Master on December 9, 2014; Mr. Ditto did not withdraw the funds.

Following the remand, the trial court entered the May 24 Order; among other things, the court ordered that the Clerk and Master pay over to Mr. Ditto the $13,061.46 being held in escrow.[5] In the motion to amend the May 24 Order, Mr. Ditto asked for additional interest from December 10, 2014, "until such time as the full amount is paid into the Clerk and Master." In ruling on Mr. Ditto's motion, the trial court held:

> Mr. Ditto claims that this Court should alter or amend its order to state that the City of Chattanooga should pay him interest on the funds that had been deposited with the Clerk and Master's office. Earlier in this case, the Court ordered that Mr. Ditto be reimbursed those funds. Mr. Ditto chose, for tactical or strategic reasons, not to execute that judgment. He chose to leave the money on deposit with the Court. Now, he claims this Court should order the Clerk and Master or the City of Chattanooga to pay him interest

---

[5] Although not clear in the record, it is apparent that $13,061.46 is the original amount paid by Mr. Ditto of $9,000.00, plus interest at ten percent from June 3, 2010, to the date the City paid the funds into court pursuant to the November 4, 2014 order.

that would have accumulated since the previous order. That request to alter or amend is **Denied**.

On appeal, Mr. Ditto does not challenge the amount of $13,061.46 as including the correct amount of interest for the period of June 3, 2010, the date of tax sale, to December 9, 2014, the date the City paid the funds into court; he argues that he is entitled to the additional interest pursuant to Tennessee Code Annotated section 67-5-2504. This argument is without merit.

Tennessee Code Annotated section 67-5-2504 provides:

(a)(1) Any person who buys real estate sold for delinquent taxes that were a lien thereon, and who shall for any cause fail to get a good title or to recover possession of the realty, shall be subrogated to all liens that secured the taxes, and all interest, costs, penalties and fees; and such person shall have the right to enforce the same in chancery for the reimbursement of the purchase money paid by such person and interest thereon.

The City's December 9, 2014 payment discharged its responsibilities under the statute and the order of the trial court. As noted by the court, Mr. Ditto chose not to retrieve the funds while the case was on appeal or during the ensuing remand; moreover, at no time did Mr. Ditto seek to have the Clerk and Master invest the funds in an interest bearing account to be invested for his benefit, pursuant to Tennessee Code Annotated section 8-21-401(i).[6]

---

[6] The pertinent portion of Tennessee Code Annotated section 8-21-401(i) states:

(i) Other fees of court clerks. The following fees apply uniformly in all courts, general sessions, juvenile, probate, circuit or chancery, and may be charged in addition to the fees for cases listed in this section:

\*\*\*

(8) The clerks of the various courts have the authority to invest idle funds held under their control, not otherwise invested. Such investments shall be in banks or savings and loan associations operating under the laws of the state or under the laws of the United States; provided that such deposits are insured under the federal deposit insurance corporation. Such investments shall not exceed the amounts that are federally insured, unless otherwise fully collateralized under a written collateral agreement, or unless the funds are deposited with an institution that is a member of the state collateral pool. The interest on such investments shall become part of the fees of the court clerk and the clerk shall be required to account for interest received, the same as with other fees received. Any funds authorized to be invested may be invested by the clerk in the local government investment pool administered by the state treasurer.

8

## C

The trial court awarded costs in the amount of $1,102.65 to Ms. Scott for the fees associated with her expert witness as well as the court reporter fees she incurred at the hearing on her application for a temporary restraining order and for the trial.[7] Mr. Ditto argues that the fee for the court reporter at the hearing on the restraining order was not awardable under Tennessee Rule of Civil Procedure 54.04, and that, because the expert only testified for one and one-half hour, the award was excessive.

Discretionary costs are available to the prevailing party in litigation in accordance with Rule 54.04(2); they are allowable only in the court's reasonable discretion. *Paschall v. Srebnick*, No. M2011-02059-COA-R3-CV, 2012 WL 2054339, at *2 (Tenn. Ct. App. June 7, 2012) (citing *Perdue v. Green Branch Mining Co.*, 837 S.W.2d 56, 60 (Tenn. 1992)). Accordingly, we employ the "abuse of discretion" standard when reviewing a trial court's decision either to grant or to deny motions to assess discretionary costs. *Paschall,* 2012 WL 2054339, at *2 (citing *Massachusetts Mut. Life Ins. Co. v. Jefferson,* 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002); *Scholz v. S.B. Int'l, Inc.,* 40 S.W.3d 78, 84 (Tenn. Ct. App. 2000)). Under that standard, "a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, and reasonable minds can disagree about its correctness." *Paschall,* 2012 WL 2054339, at *2 (citing *Bogan v. Bogan,* 60 S.W.3d 721, 733 (Tenn. 2001); *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001).

Mr. Ditto's argument is unavailing. Rule 54.02(2) expressly allows for "reasonable and necessary court reporter expenses for . . . trials" and for "reasonable and necessary expert witness fees . . . for trials." For purposes of this Rule, we see no practical distinction between a hearing on a temporary restraining order and a trial. With respect to the expert witness fee, the record shows that the expert billed for four hours on the day of trial. The Rule is broad and does not limit the amount of the allowable fee to only that time the expert is on the witness stand. The court did not abuse its discretion in making the award of costs.

---

(9) Nothing in this section shall be construed to relieve the clerks of courts from the responsibility of investing funds held under their control, pursuant to court order or under the rules of court. The interest on those investments shall accrue to the benefit of those directed by the court or by agreement of the parties to the litigation.

[7] James Bondurant was qualified as an expert in Tennessee land and title law, and testified without objection on behalf of Ms. Scott.

D

Mr. Ditto argues that the trial court erred in denying his Motion for Summary Judgment, filed February 16, 2017; the court denied the motion at the conclusion of trial. In denying the motion, the court stated "Mr. Ditto's motion for summary judgment presented the exact issues that were to be resolved at trial. Those issues were resolved at trial and a memorandum order was entered."

Case law makes clear that when a trial on the merits takes place, the denial of summary judgment ceases to be an issue we review:

> When summary judgment is denied due to the existence of a genuine issue as to a material fact, the parties proceed to try the issue and "the question of the validity of the denial of summary judgment in effect becomes moot." *E.E.O.C. v. Sears, Roebuck & Co.,* 839 F.2d 302, 353 n. 55 (7th Cir. 1988). The denial of summary judgment due to the existence of a genuine issue regarding a material fact merely decides that a trial is necessary. Once that trial has occurred, there is no need to reexamine the denial of summary judgment:
>
>> The primary question on summary judgment is whether there exists a genuine issue of material fact as to the elements of a party's claim. Once the summary judgment motion is denied and the case proceeds to trial, however, the question of whether a party has met its burden must be answered with reference to the evidence and the record as a whole rather than by looking to the pretrial submissions alone.
>
> *Johnson Int'l. Co. v. Jackson Nat'l Life Ins. Co.,* 19 F.3d 431, 434 (8th Cir. 1994) (citations omitted).

*Alex Lyon & Son Sales Managers And Auctioneers, Inc. v. Boles*, No. M2010-00388-COA-R3-CV, 2010 WL 3895520, at *1-2 (Tenn. Ct. App. Oct. 5, 2010). In ruling on the motion, the trial court correctly held that the issues of fact related to the issue of notice had been resolved at trial.

Other matters raised in the summary judgment motion related to Mr. Ditto's contentions that Ms. Scott lacked standing to pursue the action and that Ms. Scott failed to prove a defect in his title, as required by Tennessee Code Annotated section 67-5-2504. As noted earlier in this opinion, Ms. Scott claimed an interest in the property and, consequently, has standing to pursue the action to quiet title. The applicability of section

10

67-5-2504 to this case was addressed in the first appellate opinion and, consequently, was not an issue for trial.[8]

Lastly, Mr. Ditto argues the trial court erred in denying his November 11, 2016 Motion for Writ of Possession. Mr. Ditto states in his brief that this issue "is only applicable if this Honorable Court reverses the trial court's judgment granting [Ms. Scott] ownership of subject property." We agree; inasmuch as we have affirmed the trial court's judgment, this issue is moot.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in all respects.

_____
RICHARD H. DINKINS, JUDGE

---

[8] In the first appeal, this Court held:

> Ditto argues that Scott's lawsuit is barred by Tenn. Code Ann. § 67-5-2504(c), which provides that "[n]o suit shall be commenced in any court of the state to invalidate any tax title to land until the party suing shall have paid or tendered to the clerk of the court where the suit is brought the amount of the bid and all taxes subsequently accrued." (Emphasis added.) Scott responds that her action is not a suit "to invalidate [a] tax title to land." She has not challenged the validity of the tax sale. Scott's position is that Ditto received valid title to the property at the tax sale, but lost priority by failing to record his interest first. We agree with Scott that, under the facts presented here, Tenn. Code Ann. § 67-5-2504 does not bar her action, because it is not a suit to invalidate a tax title.

*Scott v. Ditto*, 2016 WL 4572507, at *3. After the argument in this case, Mr. Ditto filed a "Motion for Relief from Judgment; In the Alternative, Motion to Remand for further Consideration of Amended Statutes," in which he sought relief from the judgment resolving the first appeal in this case or a remand for the trial court to consider the effect of 2017 Tenn. Laws Pub. Ch. 299 on the issues involved in this case; he argued that the addition of the words "suits to quiet title" to Tennessee Code Annotated section 67-5-2504 in Chapter 299 mandates a holding that Ms. Scott is not entitled to maintain the action because she did not tender certain funds prior to instituting suit. We have entered a separate order denying the motion.