IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 22, 2022

## JENNY SUE TAYLOR v. GEORGE GREEN TAYLOR, III

**Appeal from the Circuit Court for Hamilton County**
**No. 13-D-714        John B. Bennett, Judge**

_____

### No. E2021-01281-COA-R3-CV
_____

George Green Taylor, III ("Father") filed a petition to modify his permanent parenting plan in the Circuit Court for Hamilton County (the "trial court"). Father's ex-wife, Jenny Sue Taylor ("Mother"), responded to the petition contending, inter alia, that Father's proposed plan was not in the children's best interests. Following a bench trial, the trial court determined that a slight change in the parties' children's summer schedule was warranted and ordered an upward deviation in Father's child support for extraordinary educational expenses. Father appeals. The trial court's ruling on Father's child support is modified to reflect that Father's base child support obligation is $731.00 per month, and we affirm as modified. We also affirm the trial court's finding that an upward deviation in Father's child support is warranted and in the children's best interests, but we remand for entry of an order and child support worksheet reflecting the monthly amount owed for said upward deviation. Finally, we affirm the trial court's ruling that Mother is entitled to her attorney's fees incurred in the trial court pursuant to Tennessee Code Annotated § 36-5-103(c).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified; Vacated in part; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellant, George Green Taylor, III.

Glenna M. Ramer, Chattanooga, Tennessee, for the appellee, Jenny Sue Taylor.

### OPINION

### BACKGROUND

This is a post-divorce custody and child support modification case involving two minor children, Drew and Max. When the parties divorced in March of 2014, the trial court entered a permanent parenting plan naming Mother the primary residential parent and providing Father with 139 parenting days. At the time, Mother's monthly income was $5,416.67, while Father's monthly income was $7,083.33. Father was ordered to pay Mother $727.00 per month in child support, made in bi-weekly payments of $335.54. Under the deviation section of the original child support worksheet, the trial court noted that the parties "agree to split [private school] tuition for both children[.]"

Since 2014, the parties have engaged in protracted litigation regarding their co-parenting time and child support. On May 13, 2019, Father filed a petition to modify the parenting plan, claiming that a substantial and material change in circumstances had occurred in that the older child, Drew, had reached the age of twelve and expressed a desire to spend more days with Father. Father attached to the petition a new proposed parenting plan providing Father with 241 parenting days with Drew. Father also claimed that his monthly income had fallen to $4,166.67, while Mother's monthly income had risen to $6,255.58. Father proposed that Mother owed Father $229.00 per month in child support.

Mother responded to the petition on June 18, 2019, claiming that the petition should be dismissed due to a prior suit pending. Mother argued that a different petition for modification was previously filed by Father and dealt specifically with financial issues such as private school tuition, taxes, and attorney's fees. While the parties do not dispute that this previous modification was filed and was being litigated, the previous petition for modification does not appear in the record. This separate modification action was disposed of on December 4, 2019, when the trial court entered an order, which does appear in the record, providing:

> 1. The Court determines [Father's] income for the year 2017 to have been $80,955.75.

> 2. [Father] owes a pro-rata share (based upon the relative percentages that each party's income bears to the total income of both parties) of the private school tuition that [Mother] has paid for the 2015-2016, 2016-2017 and 2017, 2018 academic years.

> 3. Based upon a determination of [Father's] income as of August 8, 2018, [Father] shall pay future child support to [Mother] in the amount of $870 per month, an amount that is a deviation from the child support guidelines and that includes [Father's] obligation for his share of private school tuition.

The December 4, 2019 order also contains handwritten notes explaining that without the upward deviation for child support, Father's child support obligation would have been

$727.00. per month. Another handwritten note on the order provides that "[f]uture tuition, and child support for it, shall be calculated based on pro rata income[.]"

Father filed a motion to alter or amend on December 12, 2019, asserting that the trial court's order to split tuition "pro rata" was too vague. Father claimed that "established law [] requires child support payments to be definite." The trial court granted Father's motion in an order entered January 27, 2020. The amended order provided that

> in setting [Father's] child support at $870 per month, the Court deviated from the child support guidelines to include an amount for [Father's] contribution for private school tuition for the parties' minor children with the intention that the private school tuition in future years be shared pro-rata between [Father] and [Mother] in the same ratio that their incomes bear to the tuition cost. In the future, the parties are admonished to examine their relative incomes and the children's private school tuition costs with a view toward agreeing to such modifications as may be appropriate.

The trial court then explained that "Father shall pay as on-going child support the sum of $870 per month to include his contribution toward the private school tuition for the parties' minor children and that any change in the amount of [Father's] contribution to private school tuition shall result from a complaint to modify or an agreement of the parties."

In the meantime, Father's most recent petition to modify, filed on May 13, 2019, remained pending. On January 2, 2020, Father filed an amended petition claiming that both children now wanted more parenting days with Father. Father asked that he be named primary residential parent. Father's new proposed parenting plan provided Father with 241 parenting days with both children, leaving Mother with 124 days. Mother answered the petition on September 15, 2020, denying that Father's proposed parenting plan was in the children's best interests. On December 1, 2020, a guardian ad litem was appointed to represent the children.

Father then filed yet another proposed parenting plan on February 15, 2021, in which he proposed 182.5 parenting days for both of the parties and a co-primary residential parent designation. The child support worksheet attached to this proposed plan listed Mother's monthly income as $5,442.67 and Father's monthly income as $5,342.99. By Father's calculations, Mother owed Father $126.00 per month in child support. Father also proposed that the parties "divide equally between them" the children's private school tuition, meal plans for each child, and each child's activity fees for field trips, athletics, etc.

A hearing was held on the petition to modify on April 21 and June 2, 2021. In an order entered July 22, 2021, the trial court determined that the only necessary change in the parenting schedule was a slight change to the summer schedule. Regarding child support, the trial court found:

2. Based on the Residential Schedule imposed in Exhibit B, together with each parent's income, [Father] shall pay monthly child support to [Mother] in the amount of $731.00. The monthly child support is consistent with the Child Support Guidelines based on the attached Child Support Worksheet, which is attached as Exhibit C. [Father's] monthly child support shall be paid either directly to the other parent if both parents [agree] as to that. If there's a disagreement, then it shall be by wage assignment order.

Attached to the July 22, 2021 order was the new parenting plan, which provided Mother with 241 days of parenting time and Father with 124 days of parenting time. The trial court found that Father's monthly income was $6,194.60 and Mother's monthly income was $6,337.92. Father was ordered to pay Mother $731.00 per month in child support. The order also provided:

Based on the facts in this case, the Court finds that it is in the best interests of the boys to remain in their current school and so, there is a basis for an upward deviation in the presumptive amount of child support. Consequently, the cost of the private school tuition will be divided between the parties in a ratio consistent with the parties' income. [Father] will pay 49% of the boys' private school tuition and [Mother] will pay 51% of the private school tuition.

The trial court further explained in the parenting plan that "since both boys are in private school, have been in private school for their entire lives, and are flourishing in private school[,]" the upward deviation was in the children's best interests. Attached to the parenting plan was the new child support worksheet, which listed the final adjusted support amount as $644.00 per month, with no mention of a deviation.

Both parties timely filed motions to alter or amend. Mother claimed in her motion that "[w]hile the Order and the Permanent Parenting [Plan] recite the correct amount of Child Support, the incorrect worksheet was inadvertently attached." Mother asked that the July 22, 2021 order be amended to substitute the correct worksheet. Mother also requested that the trial court rule on her request for attorney's fees. On the other hand, Father asked that the order be amended "to eliminate any change in [Father's] child support obligation[.]" Father claimed that "the amount of child support combined with the private school tuition is a greater expense than [Father] can bear."[1]

The motions to alter or amend were heard on September 13, 2021. On October 5, 2021, the trial court entered an amended order. First, the trial court granted Mother's request to substitute the "correct" child support worksheet. The child support worksheet

---

[1] Father testified at trial, however, that the children should remain in private school and that he was willing to contribute to the associated expenses. Further, Father's proposed parenting plan filed on February 15, 2021, suggested that the parties split the private school tuition and associated expenses.

attached to the amended order listed Father's final child support obligation as $731.00 per month, with no mention of an upward deviation for extraordinary educational expenses. The amended order itself, however, provided that

> [a] wage assignment shall issue for the payment of the child support and private school tuition to be paid by [Father.]. **Effective with the date of this Order, [Father] shall pay the amount of $815.21 per pay period for his combined child support and private school tuition.** A wage assignment shall issue against the wages of [Father] . . . through his employer, Tradesmen International, LLC, 9760 Shepard Road, Macedonia, Ohio 44056 [Employee ID: 388285]. Payment made from the employer shall be sent directly to [Mother].

(Emphasis added). The trial court also granted Mother's request for attorney's fees in the amount of $23,000.00.

From this order, Father timely appealed to this Court.

### ISSUES

Father raises the following issues on appeal, which we have restated slightly:

1. Whether the trial court erred in modifying Father's child support obligation.
2. Whether the trial court erred in awarding Mother her attorney's fees.

In her posture as appellee, Mother also asserts that she should be awarded her attorney's fees on appeal.

### DISCUSSION

This is an appeal from a bench trial. Accordingly, we review the trial court's factual findings de novo, presuming those findings are correct unless the preponderance of the evidence is otherwise. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006) (citing Tenn. R. App. P. 13(d)). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). Conclusions of law are reviewed de novo with no presumption of correctness. *Kaplan*, 188 S.W.3d at 635.

*Child Support*

Father first challenges the trial court's child support award. Child support decisions are reviewed for an abuse of discretion. *Bastone v. Bastone*, No. E2020-00711-COA-R3-CV, 2021 WL 1711098, at *5 (Tenn. Ct. App. Apr. 30, 2021) (citing *Mayfield v. Mayfield*, 395 S.W.3d 108, 114–15 (Tenn. 2012)). As we recently explained,

> [p]rior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).
>
> * * *
>
> Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999).

*Id.* (quoting *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005)).

The "process and criteria for ascertaining a parent's child support obligation is governed by Child Support Guidelines promulgated by the Tennessee Department of Human Services[.]" *Beyer v. Beyer*, 428 S.W.3d 59, 73 (Tenn. Ct. App. 2013) (quoting *Reeder v. Reeder*, 375 S.W.3d 268, 275 (Tenn. Ct. App. 2012)). The Child Support Guidelines have the force of law. *Wade v. Wade*, 115 S.W.3d 917, 922 (Tenn. Ct. App. 2002) (citing *Jahn v. Jahn*, 932 S.W.2d 939, 943 (Tenn. Ct. App. 1996)).

Under the Guidelines, a parent's basic child support obligation is "based on an Income Shares Model, which 'presumes that both parents contribute to the financial support of the child in pro rata proportion to the actual income available to each parent.'" *Johnson v. Johnson*, No. M2008-00236-COA-R3-CV, 2009 WL 890893, at *3 (Tenn. Ct.

App. Apr. 2, 2009) (quoting Tenn. Comp. R. & Regs. 1240-2-4-.03(1)(a)). Pursuant to the Income Shares Model,

> "both parents' actual income and actual additional expenses of rearing the child are considered and made part of the support order." Tenn. Comp. R. & Regs. 1240-2-4-.03(1)(b). After each parent's income is calculated, the trial court must then refer to "a numerical schedule, designated in these Guidelines as the Child Support Schedule (CS Schedule or Schedule) . . ., that establishes the dollar amount of child support obligations corresponding to various levels of parents' combined Adjusted Gross Income and the number of children for whom the child support order is being established or modified." Tenn. Comp. R. & Regs. 1240-2-4-.03(6)(a)(1). The dollar amount derived from the Schedule is a parent's Basic Child Support Obligation ("BCSO"). *Id.*

*Johnson*, 2009 WL 890893, at *3. Once "the amount of support to be paid for the child derived from the parent's proportional share of the [BCSO]" is adjusted "for parenting time, plus the parent's proportional share of any additional expenses[,]" the resultant amount is the presumptive child support required. Tenn. Comp. R. & Regs. 1240-02-04-.02(21); *see also Richardson*, 180 S.W.3d at 725 ("[T]he amount of support derived from a proper application of the formula in the Child Support Guidelines becomes the presumptive amount of child support owed."). This amount of support is rebuttable, however. *See* Tenn. Code Ann. § 36-5-101(e)(1)(A). Accordingly,

> trial courts may, in their discretion, deviate from the amount of support required by the [Guidelines], *State v. Wilson*, 132 S.W.3d 340, 343 (Tenn. 2004); *Jones v. Jones*, 930 S.W.2d [541, 545 (Tenn. 1996)], but when they do, they must make specific written findings regarding how the application of the Child Support Guidelines would be unjust or inappropriate in the case.

*Id.* at 724–25.

One reason for a deviation from the presumptive child support obligation is for extraordinary educational expenses, such as private school tuition. *See Kaplan*, 188 S.W.3d at 636 ("[P]ayment of extraordinary educational expenses is a separate component of an obligor's total child support obligation, that is, separate from the base child support calculated under the Guidelines."); *see also Bastone*, 2021 WL 1711098, at *14 ("The Guidelines allow for the imposition of extraordinary expenses, including educational expenses, in addition to the award of an amount of support commensurate with the Guidelines[.]"); *Beyer*, 428 S.W.3d at 74 ("A trial court may order an upward deviation from the Guidelines for extraordinary educational expenses which include tuition and other expenses associated with private school attendance."). The Guidelines provide:

(i) Extraordinary educational expenses may be added to the presumptive child support as a deviation. Extraordinary educational expenses include, but are not limited to, tuition, room and board, lab fees, books, fees, and other reasonable and necessary expenses associated with special needs education or private elementary and/or secondary schooling that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together.

(ii) In determining the amount of deviation for extraordinary educational expenses, scholarships, grants, stipends, and other cost-reducing programs received by or on behalf of the child shall be considered.

(iii) If a deviation is allowed for extraordinary educational expenses, a monthly average of these expenses shall be based on evidence of prior or anticipated expenses and entered on the Worksheet in the deviation section.

Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(d)(1). When a deviation for extraordinary educational expenses is granted, however, the trial court must enter written findings of fact explaining the following:

1. The reasons for the change or deviation from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and

2. The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and

3. How, in its determination,

(i) Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and

(ii) The best interests of the child for whom support is being determined will be served by deviation from the presumptive guideline amount.

Tenn. Comp. R. & Regs. 1240-02-04-.07(1)(c); *see also Bastone*, 2021 WL 1711098, at *15.

In this case, on July 22, 2021, the trial court entered an order setting Father's child support at $731.00 per month in accordance with the Guidelines. This was Father's presumptive monthly obligation. The trial court also ordered Father to pay 49% of both children's tuition as an upward deviation, in accordance with Father's portion of the parties' combined adjusted gross income. The child support worksheet attached to the

order, however, set Father's child support at $644.00 per month, with no mention of a deviation. Following the parties' motions to alter or amend, the trial court substituted a different child support worksheet, which reflects Father's presumptive child support obligation as $731.00 per month. The trial court's amended order, however, provides that Father is to pay $815.21 "per pay period" as combined child support and Father's share of private school tuition.

On appeal, Father takes issue with the trial court's finding that Father must pay $815.21 "per pay period." Father also claims that the child support worksheet is void inasmuch as it does not contain a specific amount owed for the extraordinary educational expenses, and maintains that the record is devoid of any evidence on the cost of tuition.

We agree with Father that the trial court's amended order is perplexing. First, the child support worksheet appended to the amended order, by our calculations, reflects an accurate presumptive child support obligation for Father – specifically, $731.00 per month. Father has not asserted on appeal that any of the information reflected in that worksheet, such as the parties' monthly income, or the health insurance credit applied to Mother, is incorrect. It is unclear from the record why the child support worksheet reflects that Father owes $731.00 per month, yet the trial court's final order provides that Father owes $815.21 "per pay period." Accordingly, the trial court's October 5, 2021 order is modified to reflect that Father's child support obligation, prior to any deviation, is $731.00 per month. The provision regarding a wage assignment we leave undisturbed.

Father also argues on appeal that the child support worksheet is "void" because it does not contain a monthly average of the anticipated educational expenses owed by Father. Father correctly notes that according to Guidelines, when a deviation "is allowed for extraordinary educational expenses, a monthly average of these expenses shall be based on evidence of prior or anticipated expenses and entered on the Worksheet in the deviation section." Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(d)(1)(iii). On the other hand, Mother points to an excerpt of testimony from a 2018 hearing, in which it was established that the older child's yearly tuition was $11,250.00, and the younger child's yearly tuition was $10,500.00. Mother also argues that the trial court correctly concluded that it is in the children's best interests to remain in private school.

In *Beyer v. Beyer*, this Court remanded a trial court's ruling on extraordinary educational expenses because the trial court failed to appropriately explain its reasoning for the upward deviation or include the monthly costs:

> Beyond stating that the children always attended private school, the trial court provided no written findings or any justification for ordering Father to pay for the children's extraordinary educational expenses. Moreover, the trial court made no findings as to the amount of these expenses and failed to enter an amount representing the monthly average of these

expenses in the deviation section of the child support worksheets. In the absence of evidence or the requisite findings to support an upward deviation for extraordinary educational expenses, we are unable to properly evaluate the trial court's determination. Therefore, we remand this issue to the trial court to make the requisite findings and determine whether private schooling for the children is appropriate, and if so, who shall pay what portion of these extraordinary educational expenses.

428 S.W.3d at 75; *see also Erdman v. Erdman*, No. M2018-01668-COA-R3-CV, 2019 WL 6716305, at *8 (Tenn. Ct. App. Dec. 10, 2019) (vacating trial court's allocation of certain private school fees to mother where "the record [did] not appear to shed any light on the costs of the fees and expenses").

While the *Beyer* Court completely vacated the trial court's ruling on extraordinary educational expenses, that is unnecessary here. Whereas in *Beyer* the basis for the upward deviation was unexplained, there is no dispute in this case that keeping the children in private school is in the children's best interests, and the trial court made sufficient findings of fact and conclusions of law regarding same. During the 2021 hearings, Father agreed that the children were thriving in their respective schools and agreed that he should be responsible for an equal portion of the children's private school tuition. Father testified that he was willing to make an equal contribution to both children's tuition. Further, Father does not argue in his appellate brief that private school is not actually in the children's best interests, but rather takes issue with the manner in which the child support worksheet and order are drafted.

Consequently, we agree with the trial court that an upward deviation in Father's presumptive child support for extraordinary educational expenses is appropriate and serves the children's best interests. Not only did Father concede this at trial, but the record is replete with testimony that both children are doing well in school, are active in school sports and extracurricular activities, and have many friends. Insofar as the record supports this conclusion and the trial court made written findings to this effect, we take no issue with the ruling that an upward deviation for extraordinary educational expenses is warranted.

We agree with Father, however, that no updated proof of any educational expenses, tuition or otherwise, was offered during the 2021 hearings.[2] We also agree with Father that the deviation portion of the operative child support worksheet should reflect a monthly average of the children's private school tuition and expenses for which Father is responsible, and that the trial court's final order should be consistent with the worksheet. Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(d)(1).

_____

[2] The 2021 hearings largely centered around whether a substantial and material change in circumstances had occurred such that Father should receive increased parenting time with the children.

- 10 -

Accordingly, we vacate the portion of the trial court's order providing that Father shall pay $815.21 per pay period for both child support and his share of the extraordinary educational expenses. We remand this case to the trial court for entry of an amended child support worksheet and order reflecting the monthly amount that Father owes for his portion of the children's private school tuition and associated expenses. Because extraordinary educational expenses are an upward deviation, the monthly amount owed is to be calculated separately and added to Father's base obligation of $731.00 per month, pursuant to the Guidelines. *See Blankenship v. Cox*, No. M2013-00807-COA-R3CV, 2014 WL 1572706, at *10 (Tenn. Ct. App. Apr. 17, 2014) ("If the court finds private schooling is appropriate, then the trial court is required to calculate the extraordinary education expenses separately and add them to the base child support award."). As the only proof of the cost of tuition dates back to 2018 and lacks detail, the trial court may decide, in its discretion, whether it requires updated proof on the cost of both children's yearly tuition and associated private school expenses.

### Attorney's Fees

The trial court awarded Mother $23,000.00 in attorney's fees, which Father now challenges on appeal. Tennessee Code Annotated § 36-5-103[3] provides, as relevant:

> (c) A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

A trial court's decision to award attorney's fees to a prevailing party under section 36-5-103 "is within the discretion of the trial court, and we will not overturn the trial court's

---

[3] Tennessee Code Annotated § 36-5-103(c) previously provided that:

> (c) The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

The amended version applies to "actions commenced on or after" July 1, 2018. 2018 Tennessee Laws Pub. Ch. 905 (H.B. 2526). Because the operative modification petition was filed on May 13, 2019, we apply the version of the statute in effect on that date.

decision absent an abuse of discretion." *Strickland v. Strickland*, 644 S.W.3d 620, 635 (Tenn. Ct. App. 2021).

Here, Father makes several arguments. First, Father claims that Mother was not the prevailing party below. This argument lacks merit, as Wife successfully defended Husband's modification action in the trial court. *See Eberbach v. Eberbach*, 535 S.W.3d 467, 480 (Tenn. 2017) (explaining that wife was "prevailing party" when she "achieved the primary benefit sought" in the proceedings, and the judgment in her favor "modified the opposing party's behavior in a way that provided a direct benefit" to her (quoting *Fannon v. City of LaFollette*, 329 S.W.3d 418, 432 (Tenn. 2010))).

Father initiated this action in May of 2019, seeking increased parenting time first with Drew and then both children. In his proposed parenting plans, Father had equal or more parenting time than Mother, and Mother owed Father child support. None of these proposed plans came to fruition, and the trial court ultimately gave Mother 241 days of parenting time and Father 124 days of parenting time. Mother was also given sole educational decision-making authority regarding the children due to past disagreements regarding schooling. Father was also given an upward deviation in child support for extraordinary educational expenses; although Father finally agreed to this at the time of trial, the record clearly reflects that Father has been recalcitrant in shouldering his share of the children's educational expenses, as well as his responsibility for the children's extracurricular activities. Mother is the prevailing party.

Father also argues that $23,000.00 in attorney's fees is disproportionate in light of Father's ability to pay. Nonetheless, this argument does not establish how the trial court abused its discretion in making the award, nor does Father cite any legal authority to support his contention. We addressed a similar situation in *Sexton v. Carden*, in which a father challenged a trial court's award of attorney's fees to the mother of the parties' children following a custody dispute. No. E2019-01057-COA-R3-CV, 2020 WL 7240297, at *4 (Tenn. Ct. App. Dec. 9, 2020). The father in that case asserted that he did not have the ability to pay the attorney's fees and that the mother had the ability to pay her own fees. *Id.*

The father's arguments did not "persuade this court to interfere with a matter committed to the trial court's discretion." *Id.* We explained that while "a trial court may consider proof of a party's inability to pay such fees . . . the purpose of requiring a non-custodial parent to pay attorney fees is to protect the legal remedies of the child, not the parent." *Id.* (quoting *State ex rel. Groesse v. Sumner*, 582 S.W.3d 241, 268–69 (Tenn. Ct. App. 2019)).

Consequently, Father's ability to pay is not "the controlling consideration[.]" *Id.* (citing S*herrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992)). Moreover, Father has "made no argument that the trial court improperly weighed any of the factors under

[Tenn. R. Sup. Ct.] 1.5, has provided no expert affidavit to the court contending that [Mother's] bills were excessive, and has not identified any work that should not have been performed." *Id.* Further, as there is no transcript from the hearing on September 13, 2021, the record contains no indication that Father challenged the fee request in the trial court. Under the circumstances, we cannot find that an abuse of discretion occurred.

Finally, Father also points out that the trial court awarded the attorney's fees to Mother's counsel, as opposed to Mother. The October 5, 2021 order provides that "[t]he Court exercises its discretion pursuant to Tennessee Code Annotated § 36-5-103(c). . . to award attorney fees to [Mother] for defending this action." The order then provides, however, that "Glenna M. Ramer is granted a judgment against [Father] in the amount of $23,000.00." Father asserts that because Mother's counsel is not a party, a judgment in Ms. Ramer's favor was improper. On appeal, Mother disagrees.

Neither party cites any case law supporting their position, nor have we found any squarely addressing this question. Nonetheless, the plain language of Tennessee Code Annotated § 36-5-103(c) supports Father's position, inasmuch as the statute provides for an award of fees for a "prevailing *party*." (Emphasis added). The language of section 36-5-103(c) is plain and unambiguous, and thus we look no further than the face of the statute. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010) ("When a statute's text is clear and unambiguous, the courts need not look beyond the statute itself to ascertain its meaning." (citing *Green v. Green*, 293 S.W.3d 493, 507 (Tenn. 2009))). Ms. Ramer is not the prevailing party, Mother is. Even if the statute were unclear, which it is not, the record does not reflect that Ms. Ramer ever sought a judgment in her favor against Father. Rather, in Mother's answer to Father's petition for modification, Mother's counsel requested that the "[trial court] award [Mother] her reasonable attorney fees and expenses." Mother reiterated this request in her motion to alter or amend, asking that the trial court "include an award of attorney fees for [Mother]."[4]

Because Mother is the "prevailing party," she is the person entitled to an award of attorney's fees against Father. Accordingly, we modify the portion of the trial court's order awarding Ms. Ramer a $23,000.00 judgment against Father to reflect that Mother is the person awarded a $23,000.00 judgment against Father. The ruling on attorney's fees is affirmed as modified.

As a separate issue, Mother requests that she be awarded her attorney's fees incurred on appeal. "The determination of whether to award attorney's fees on appeal is within the sole discretion of the appellate court." *Trezevant v. Trezevant*, 568 S.W.3d 595, 641 (Tenn. Ct. App. 2018) (citing *Moses v. Moses*, No. E2008-00257-COA-R3-CV, 2009 WL 838105, at *10 (Tenn. Ct. App. Mar. 31, 2009)). Under all of the circumstances, we decline to award Mother her attorney's fees incurred on appeal.

---

[4] There is no transcript from the hearing on the parties' motions to alter or amend.

**CONCLUSION**

The order of the Circuit Court for Hamilton County is vacated in part, modified, and remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to the appellant, George Green Taylor, III, and one-half to the appellee, Jenny Sue Taylor.

_____
KRISTI M. DAVIS, JUDGE